GOODYEAR YELLOW PINE CO. *et al. v.* CLARK.

(Division B. June 6, 1932.)

[142 So. 443. No. 30048.]

L. L. Tyler, of Picayune, J. C. Shivers (of Parker & Shivers), of Poplarville, and Stevens & Heidleberg, of Hattiesburg, for appellants.

Rawls & Hathorn, of Columbia, and Hathorn & Williams, of Poplarville, for appellee.

Argued orally by **Rowland W. Heidelberg**, for appellant, and **E. B. Williams**, and **S. V. Hathorn**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This is an appeal from a judgment of the circuit court awarding H. F. Clark eight thousand dollars for an alleged personal injury resulting in the loss of his eyesight.

The declaration was filed on January 14, 1930, while the alleged injury is said to have occurred on January 18, 1925.

The plaintiff, Clark, appellee here, during 1925, and until 1928, was employed as a watchman at the plant of the appellant. Among other things, his duty was to watch the slab pit in which refuse of the mill was being constantly burned and to wet down the fire whenever, from any cause, it became apparently dangerous, or there was danger of setting fire by means of sparks, etc., being blown to other parts of the mill property.

This slab pit was situated slightly west of north above the mill of appellant, and between the slab pit and the mill there was a fire plug from which water was procured and transmitted by means of hose, to wet down the fire in the slab pit.

There were other employees engaged in the service of the appellant company who also seemed to have like duties with the appellee, Clark. On the night of the injury in question, according to the plaintiff's testimony, one Frisby, who was a foreman over the appellee, came by a building situated upon the premises, and found the appellee and other employees had taken shelter from the

wind, it being a cold night and the wind blowing strong-
ly from the north, and the fire had grown to dangerous
proportions, and sparks were being blown by the wind
towards the mill, and that Frisby said, ''What watch-
men,'' which they understood to refer to their failure to
wet down the fire, and then proceeded immediately to go
about that task.

The plaintiff (appellee here) testified that this fore-
man, Frisby, directed him to go to house No. 10 where
hose was stored, get the hose, and wet down the fire;
that he went to this house, got two sections of hose, each
fifty feet, amounting to one hundred feet, attached it
to the fire plug; placed the hose in a semi-circular way
from the fire plug around the west or southwest side of
the fire plug, and was proceeding to sprinkle the fire
from the hose. While so engaged, and while consider-
able sparks were being thrown from the fire, the wind
suddenly changed, and the plaintiff (appellee here) testi-
fied that hot ashes and coals struck him in the left eye,
injuring his eye and causing permanent blindness in
that eye, and, by sympathy, the other eye, finally result-
ing in total blindness in three or four years after the in-
jury occurred. It was the theory of the plaintiff that the
company was negligent in that a part of the screen pro-
tection between the fire and the mill had fallen down
leaving a gap through which live coals would pass that
would not have passed had it been intact. The plaintiff
also contended that there were insufficient plugs to ren-
der the place safe. It appears that the plug used on the
night in question was the closest to the slab pit; there
was another fire plug near the barn some distance from
the slab pit, but insufficient hose in the house to go to
this distant plug.

It does not appear that there was not other hose ob-
tainable, if needed, but, taking the plaintiff's statement
as being true, he went to house No. 10 at the direction of
his foreman for the purpose of getting hose to attach

to a fire plug to wet down the fire. He was not given any directions by his foreman as to where he should stand, or how he should operate the hose in performing his duty. In other words, he selected his own place and used his own method of fighting the fire.

We do not think the screen wire between the slab pit and the mill was placed there for the protection of the watchmen in wetting down the fire, or that the master was under duty to erect a screen for this purpose. The employees, among other things, were employed to control the fire in the slab pit. Their employment was for this very purpose, and, very probably, the fact that the wire was down was the cause of the employment of the plaintiff, or the number of men who were employed to perform this duty.

This seems to bring the case within the purview of Hooks v. New Orleans & N. E. R. R. Co., 111 Miss. 743, 72 So. 147, 148. The court in that case, said that: "The deceased was employed to remedy a defectively loaded car—not to unload the car. He knew the conditions and dangers incident to the employment. The negligent loading of the car, if such was the case, was the thing he was engaged in correcting. The negligent loading was not the cause of the injury, but it was the cause of his employment. He was ordered to readjust the dangerous load and make it safe, and in the performance of this work he was injured. In other words, he undertook to repair the negligence of some other employee, and in doing so the logs rolled off and crushed him."

It is clear from the evidence of the plaintiff and his witnesses that their negligence, on account of seeking shelter from the cold, caused the fire to go into dangerous proportions. Had they acted promptly in the performance of their duties, the danger which they were combating when plaintiff was injured would probably not have existed. It is clear under the law, that a party cannot benefit by his own wrong and negligence; and, as the

negligence of the plaintiff in the case at bar caused the situation to arise which resulted in his injury, we do not think he can recover therefor.

In the next place, the plaintiff selected his own place and method of fighting the fire in question. In such a case, the master is not responsible for the safety of the place selected by the employee for his own purpose. Ovett Land & Lumber Co. v. Adams, 109 Miss. 740, 69 So. 499; Buckeye Cotton Oil Co. v. Saffold, 125 Miss. 407, 87 So. 893; Rose v. Pace, 144 Miss. 375, 109 So. 861; Stokes v. Lumber Co., 151 Miss. 711, 118 So. 441; 18 R. C. L. 596, sec. 97; and 39 C. J., page 343, secs. 463 and 466.

We are therefore of the opinion that there was no liability on the part of the appellant for the appellee's injury; and, in this view, it is unnecessary to decide the questions affecting a compromise and settlement, and the question of admissibility of evidence as to what occurred between the physician and the plaintiff in the presence of persons leading him because of his blindness.

Reversed, and judgment here for the appellant.