## CROSSETT LUMBER CO. *v.* LAND.

[In Banc. No. 20951.]

1. MASTER AND SERVANT. *Failure to instruct experienced employee appreciating dangers held not negligence.*

The employer is not bound by law to give instructions to an employee who from intelligence and experience, or knowledge, is able to appreciate the dangers of the employment he has undertaken.

2. MASTER AND SERVANT. *Danger from creosote flying into eye obvious and a hazard of employment.*

The danger of injury to an experienced employee from creosote flying into his eye while superintending the driving of a creosoted stave in the groove of a silo was obvious from ordinary observation, and was a hazard incident to the employment.

3. MASTER AND SERVANT. *Failure to instruct experienced servant of obvious danger not negligence.*

The failure of the employer to instruct the employee who was an experienced builder in charge of building a silo, that creosote would injure his eye if it flew into it from a driven stave, was not negligence in the employer.

4. MASTER AND SERVANT. *Injury to eye of unwarned but experienced employee by flying creosote held accident resulting from his imprudence.*

The injury to the eye of the competent and experienced employee by creosote contact, under such circumstances as above, was not caused by the negligence of the employer, but was an accident resulting solely from the imprudence of the employee.

APPEAL from chancery court of Panola county.

HON. J. G. McGOWEN, Chancellor.

Suit by attachment by J. W. Land, administrator, against the Crossett Lumber Company and others named as garnishees. Decree for plaintiff for two thousand dollars, and defendant appeal. Reversed, and judgment entered for defendant.

*J. B. Corothers* and *F. W. Montgomery,* for appellant.

Stripped of its judicial embellishment, complainant's first allegation of negligence is, that the lumber company failed to say to him when it employed him as superintendent to erect these silos, or superintend their erection, and furnished him among other things for use "a substance composed largely, perhaps wholly, of creosote," "Land, it will injure your eye if you get any of this wood preservative in it, and you should apply it so as not to allow any to get in your eye," and that such failure to so warn him, constituted actionable negligence.

In view of the settled law in cases of this character, this allegation of negligence, and the evidence tending to support it, constitute a legal absurdity. Land was an intelligent man, possessed of a fair education; he was thirty-five years old; not an ordinary laborer, but a "contractor and builder." He admitted having had more than ten years actual experience in all kinds of construction work, and had handled and was familiar with all kinds of building materials, including paint, etc. He was employed as an experienced builder, and recommended himself as being fully capable of taking

charge of and building their silos. There was nothing to put the lumber company upon notice that he was not fully competent to handle the situation, and was not aware of any ordinary dangers incident to his employment. The law on this subject can be stated as follows:

"No duty rests upon a master to instruct a servant as to the probable dangers of the employment where he is mature, intelligent and experienced in the work, and the master has no notice that he is not fully competent and acquainted with such dangers." *King* v. *Morgan,* 48 C. C. A. 507; *North Ala. etc., Co.* v. *Beacham,* 37 So. 227; *Am. Malting Co.* v. *Lelevelt,* 101 Ill. App. 320; *Peterson* v. *New Pittsburg Co.,* 63 A. S. R. 289; *Republic I. & S. Co.* v. *Ohler,* 68 N. E. 901, 161 Ind. 260; *Labelle* v. *Inh. of Montague,* 54 N. E. 859; *Brundige* v. *Dodge Mfg. Co.,* 66 N. E. 604; *Burton* v. *Harvard Brewing Co.,* 67 N. E. 356; *O'Keefe* v. *John P. Squire Co.,* 74 N. E. 340; *Omaha Bottling Co.* v. *Theiler,* 80 N. W. 821, S. C., 80 A. S. R. 673; *Weed* v. *Chicago, etc., R. R.,* 99 N. W. 827; *Saucier* v. *N. H. Spring Mills,* 56 Atl. 545; *Tompkins* v. *Marine Eng. & Mac. Co.,* 58 Atl. 393; *Moose, etc., Co.* v. *Richardson,* 28 So. 334; S. C. 664 A. S. R. 785; *Sandquist* v. *Ind. Tel. Co.,* 80 Pac. 539.

And in 1 Labatt's, Master & Servant, sec. 245, the rule is stated in this language: "An obvious corollary of the general principle stated in section 238, *supra,* is that a master is not bound to give instruction to a servant who has acquired sufficient special knowledge to enable him to appreciate the perils of the employment which he had undertaken" and again the rule is stated in *Hanel* v. *Obrigekewitsch,* 168 N. W .45, 2 A. L. R. 1029, as follows: "An employee is presumed to see and understand all dangers that a prudent and intelligent person of the same age and experience, and with

the same capacity for estimating their significance, would see and understand." 18 R. C. L. 570.

And in the case of *Railroad Co.* v. *Downs,* 102 Miss. at page 142, Justice REED in delivering the opinion of the court, states the rule in this language: "It was not incumbent upon the appellant to give any warning and instruction to appellee regarding any dangers or perils connected with the work in which he was engaged. Such dangers were ordinary hazards, patent to the average workman, or such as were easily discoverable in the exercise of ordinary intelligence and care. The proof shows that appellee was not without experience in the work of a section hand about railroad tracks and road beds, and that the work then being done was not unusual, but was ordinary. From the facts in evidence we believe the appellant could have rightfully assumed that appellee possessed such experience and judgment ordinarily found in workmen of his grade, and that he was reasonably skilled in the work he was undertaking.'

Both the pleadings and evidence in this case showing that complainant was mature, intelligent and experienced, and according to his own statement, was fully capable of doing the work, not as a mere laborer, but as superintendent, which he was employed to do, there was no want of prudence and caution on the part of the defendant in failing to advise him that particles of the "dope" as it was termed by the complainant, or liquid furnished to treat the ends of the staves before joining them together, would injure the eye by contact and to so use the same as not to permit it to get into his eye.

We submit that there is nothing in the allegation of negligence above discussed, nor in the evidence tending to sustain the allegation, which would in law require the defendant to have given the complainant such a warning. The authorities which we have above cited completely refute this contention.

II. We take it also that the court will readily hold, that the chance or risk of particles of the liquid wood preservative, disadhering to the wood and coming in contact with the mechanic or workman applying same, is such an obvious and patent hazard as to dispense with the necessity in any case with warning by the employer. The law undoubtly charges an experienced workman of maturity and intelligence, with knowledge that particles of liquid substance being applied to a structure such as this, would likely not adhere, or disadhere to the structures, and adhere to the person of the workman. A workman of a very low order of intelligence even would know this, to say nothing of a person possessed of sufficient knowledge and experience to act as superintendent of a job.

The rule of law is stated by Justice Cook in the case of *Y. & M. V. Ry.* v. *Hellum,* 119 Miss. 229, as follows: "It is elementary law, that employees assume the obvious risks incident to their employment." *N. O., etc., Ry.* v. *Hughes,* 49 Miss. 258; 1 Labatt's Master & Servant, sec 238; 1 Labatt's Master & Servant, sec. 239.

The principle of law announced by Justice Cook, in the case of *Y. & M. V. Ry.* v. *Perkins,* 108 Miss. 111, 66 So. 273, fits perfectly the facts in this case in this respect. I quote from the opinion of the court in the Perkins case at page 119 and 120: "It is perfectly manifest that appellant was a skilled carpenter and had constructed a great many scaffolds like the one in question; that he knew all about how they ought to be constructed to make them safe; that the instructions given by the assistant foreman, were of the most general and perfunctory character, no doubt because the foreman knew that appellee was qualified to do this sort of work without any advice from him. It would not be unfair to to say that appellee, knowing the danger, voluntarily elected to take chances; but aside from this view of this

case, we ase forced to the conclusion, taking the record in its most favorable aspect, that as a matter of fact the scaffold was changed by appellee himself, and that no specific commands or instructions as to how the work was to be done were intended to be given by the assistant foreman. Indeed, the work was of the simplest kind, and the foreman did not limit the workman as to the method of performing it, and at most he only made a suggestion which appellee was at liberty to accept or ignore as he saw fit. There is nothing in the record to justify the idea that the foreman directed the manner of doing the work, in any proper sense, nor does it appear that he saw the work done; but on the contrary it appears that appellee supervised the work and in one particular he attempted to improve the foreman's suggestion.

It is, of course, the duty of the master to provide a reasonably safe place for the servant to do his work, and this duty is nondelegable; but when the workman himself is doing the work for his own safety, and neglects to take the simplest precautions to insure his own safety, which he might have taken without violating his general instructions, his failure to take the precautions is his own neglect, and not his master's."

Let us never lose sight, in considering this case, of the important fact that complainant was not an ordinary laborer, but the superintendent, whose duty it was to plan and direct the laborers in the performance of the details of the work. The evidence offered on behalf of the complainant in this case completely refutes the allegation in complainant's bill that he was not negligent in the performance of his duty; but shows conclusively that his failure to observe the simple precaution of dipping the staves before joining them, about which he had been given no instruction, and the doing of which would not have been in violation of any instruction which

he had received, was the sole cause of his injury. As superintendent of the job, complainant should have required Will Hellums to let the surplus fluid drip off the end of the stave before driving it in the groove. This would have required only a moment, and would have obviated the injury. It was peculiarly complainant's duty to see that this was done.

IV. But viewing the case as a whole, on the pleadings and evidence, it seems to us the most plausible explanation of the injury, is that it is one of those deplorable accidents, which resulted in very serious injury to complainant, but for which no one is responsible. The case of *Railroad Co.* v. *Blockman,* 87 Miss. 192, 39 So. 479, is directly in point here.

We specially refer the court to the excellent brief of eminent counsel for the appellant in the Blockman case, and the decisions cited by Justice CALHOUN at page 203, in support of his opinion.

And again, in the recent case of *Miss. Central R. R. Co.* v. *Bennett,* 111 Miss. 163, which was a suit for damages for an injury to the eye caused by a flying particle of iron finding lodgment in the eye of a blacksmith who was engaged in cutting an iron rod, this court, through Chief Justice SMITH, re-stated the rule announced in the *Blockman case, supra,* in the following language: "On the evidence it seems clear that appellee's injury was the result of an unfortunate accident for which no one was to blame unless it was the helper, who according to appellee should not have struck the anvil in breaking the rod, but should have struck the rod only. The peremptory instruction requested by the appellant should have been given."

Courts of last resort in other states are in line with the decisions of this court in the Blockman and Bennett cases, supra. The supreme court of Kansas, in the case of *A. T., etc., Ry.* v. *Weikal,* 84 Pac. 720, lays down this rule: "For an employer not to warn a machinist's

helper who has been such for months and is a young man of intelligence, of the danger of chips flying when Steel is cut with a chisel, is not negligence. The danger being obvious and assumed.''

And in the case of *Wolf* v. *New Bedford Cordage Co.,* 76 N. E. (Mass.) 222, the court says: ''A master is not bound to instruct an apprentice machinist that if certain steel needles or teeth on an endless chain broke on coming in contact with a crowbar the pieces might fly; the danger being an obvious one.'' See also *Rodley* v. *Shapiro,* 99 N. Y. S. 1077.

Summary.  We respectfully submit the decree of the learned chancellor who tried this case was incorrect, should be set aside and reversed and a decree entered in this court for appellant for either or all of the following reasons:

(A) The complainant was a man of maturity, intelligence and experience, was employed as a superintendent by reason of these qualities, and the lumber company had no notice or reason to believe he was not fully competent and acquainted with the ordinary risks and dangers incident to the employment.

(B) The injury to him was manifestly the result of a risk or hazard which was obvious and patent to him when he accepted the employment, one which he voluntarily assumed, and for which he was paid.

(C) The injury to complainant was not the proximate result of carrying out any specific instructions of Parnell, but was the proximate result of his own failure to take the simplest precaution to prevent the injury to-wit: To require his helper to let the stave drip momentarily before driving it in the groove, in order to get rid of the surplus of wood preservative. This is a precaution which he could have taken without violating any general instructions from Parnell, and as superintendent it was his duty to see that all

necessary precautions were taken to prevent injury to workmen and himself in executing general orders.

(D) The injury to complainant was an accident pure and simple, and does not give rise to a cause of action.

"The effect of the accident to complainant is very deplorable indeed; but whether the appellant is liable in damages is a question of law, and not of sympathy." *Railroad Co.* v. *Blockman, supra.*

*L. B. Lamb,* for appellee.

The fact that there was an order from the substance was no warning of danger. Many properties have an offensive odor and yet would be harmless to the skin or eye. Masters will be presumed familiar with latent as well as patent dangers, ordinarily accompanying the business in which he is engaged. *Wagner* v. *Jayne Chemical Co.,* 20 A. S. R. 745. The court in that case at page 749 says: "The fact that the fumes of nitric acid may be perceptible to the senses is conclusive of nothing. The court could not say, as a matter of law, that every odor is a warning of danger."

Knowledge of dangers likely to arise from the use of dangerous substance is not imputable to the servant in the absence of special experience or instruction. *Pigeon* v. *W. P. Fuller & Co.,* 159 Calif. 691; *Fox* v. *Peninsular W. Lead & Color Works,* 84 Mich. 676, 48 N. W. 203; *McCray* v. *Sterling Varnish Co.,* 7 Pa. Super. Ct., 610; *Texas & N. O. R. Co.* v. *Gardner,* 29 Tex. Civ. App. 90 69 S. W. 217.

Mr. Land, the servant in this case, was an inexperienced man in the business in which he was engaged when injured, and wholly ignorant of the highly dangerous qualities of the substance that put out his eye, and the master knew he was ignorant and inexperienced. Yet no sort of warning was given him. Instead of a warning as to the danger in handling this

stuff he was ordered to use it in a way that made it more dangerous.

The servant here was not negligent. He had no knowledge that the stuff was dangerous. This is not denied or contradicted by any sort of proof. Even if he had known that the stuff was dangerous that would not relieve appellant, but he did not know it because it will cause temporary inconvenience to get any foreign substance in the eye does not convict Mr. Land of any negligence, if it be granted that any foreign substance will cause damage to the eye. There are many substances that have as bad odor as this preservative had and that have about the same consistency and appearance that would not put out an eye or blister the skin.

Counsel blow hot and then blow cold. They say that when Mr. Land began to apply this mixture by dipping the ends of the staves in the can or bucket, that he must have known that some of it would be caused to fly on his person when the staves were driven up. Yet they · argue that the occurrence was an accident, and cite *Railroad Company* v. *Blockman,* 87 Miss. 192.

If Mr. Land had known the stuff was dangerous he might have done the work properly and yet avoided injury. But when he was ordered to apply the preservative by dipping the staves in the bucket the danger to him was enhanced greatly, this being confessed by counsel for appellant.

We have the master, knowing the stuff was dangerous, ordering the servant to use it in a way that would certainly cause more of it to fly from the staves and onto his person. This was calculated to lull the servant into a feeling of security even if he had any cause to apprehend any danger. While the injury may not have ben a necessary result of the dipping, it was a most probable one. None of the substance had got on the person of Mr. Land before the injury, and he had been

using a brush to apply most of the time; in fact had been dipping the staves but a short time.

In the Blockman case cited by counsel for appellant and referred to above it was held by this court that no unsafe appliance was furnished, and that event was extremely improbable and not to be foreseen; that, while the danger in the beginning of the operating was not apparent to the engineer, the superior officer, the fireman, the injured person, could have avoided the injury by turning his head after he saw the splinters fly from the file. The servant in that case saw and perceived the danger and could have prevented the injury by turning his head. In this case Mr. Land had no sort of warning of any danger until he was injured. He had no opportunity to avoid injury. Blockman did have that chance. The Blockman case was decided before Acts of 1910 and 1914.

Counsel refer to case of *Miss. Cent. R. R. Co.* v. *Bennett,* 111 Miss. 163.

There was no negligence on the part of the master. The servant there was not furnished with a defective tool to work with. The part of the anvil being used was in good repair and not defective.

Counsel refer to the case of *Y. & M. V. R. R. Co.* v. *Hellum,* 119 Miss. 229. Quoting the expression that employees assume the obvious risk of the employment, that rule does not obtain where the master is negligent. Where the master is negligent there is no assumption of risk in this state, so the Hellum case has no application here.

It is the non-delegable duty of the master to furnish the servant with a safe place to work, and with safe appliances to work with. The servant does not assume the risk of his employment when the master is negligent.

This is well settled by our decisions, this question having been frequently passed upon by this court. I

respectfully refer the court to the following cases which
are familiar to the court: *Benton* v. *Kinkbind Lbr.
Co.,* 118 Miss. 558; *Sea Food Co.* v. *Alves,* 117 Miss. 1;
*Huff* v. *Bear .Creek Mill Co.,* 116 Miss. 509; *Edwards*
v. *Lumber Co.,* 113 Miss. 383; *Murray* v. *Drug Co.,*
110 Miss. 261; *Parker* v. *Wood Lumber Co.,* 98 Miss.
751; *Railway Co.* v. *Broome,* 97 Miss. 201; *Railroad
Co.* v. *Wiley,* 88 Miss. 825; *Railroad Co.* v. *Gill,* 88
Miss 417. In the case of *Murray* v. *Drug Co.,* 110
Miss., the court at page 269 say: "This suit is bot-
tomed on the nondelegable duty of the master to fur-
nish the servant a safe place in which to work. This
court has said on this subject in the well-considered case
of *A. & Ry. Co.* v. *Groome,* 52 So. 703, through Justice
SMITH: "The duties of the master relative to furnish-
ing the servant a safe place in which to work cannot
ordinarily be delegated to fellow servants, and the
risk relative thereto is not such as is ordinarily assumed
by the servant.'"

This is a correct announcement of the law on this
subject, and as a matter of law, therefore, on the facts
of this case, no assumption of risk nor contributory neg-
ligence can be charged against deceased employee. It
was the duty of the master to use every reasonable
effort to see that the place in which these employees
worked was safe, and they had a right to assume that
this duty would be strictly complied with. Besides
which even if the doctrine of contributory negligence
and the assumption of risk could be invoked, it is equal-
ly clear on the testimony which we have set out that
whether the deceased employee was guilty of contribu-
tory negligence or assumed the risk was a question of
fact for the jury and not for the court." So, under
chapter 156, Laws of 1914, page 200, and the many de-
cisions of our court, the doctrine of assumption of
risk cannot be availed of in this case by appellant, nor
can it escape ·on account of mere contributory negli-

gence on the part of Mr. Land even if he had been guilty of such.

The fact that place or appliance or substance is unsafe and obvious and known to the servant does not relieve the master of liability. A wilful use of appliance or place or substance in such a way as a reasonable man would know would certainly result in injury, might bar a recovery, but mere use of place, appliance or substance with knowledge of danger or defect would not. *Sea Food Co.* v. *Alves,* 117 Miss. 1.

Counsel argue that a man of ordinary sense would have known that this preservative would fly from the staves when they were being driven, up and onto any person or object nearby; that this was a necessary and inevitable result from dipping the staves and driving them up. If so, the master knew this and the occurrence was not an accident, something that could not have been foreseen.

But they argue that Mr. Land was negligent in placing himself where the stuff could fly onto his person. He was not negligent because he had no knowledge and had no reason to suspect that the preservative would injure him if it did get on his skin or into his eye.

But if he was negligent under Laws of 1910, chapter 135, par. 502, Hemingway's Code, and the decisions thereunder, and above cited, appellant would still be liable. Mere contributory negligence would not be a bar to recovery.

In the case of *Railroad Co.* v. *Gill,* 88 Miss. 424, this court held before the passage of the Acts of 1910 and of 1914 that a servant was entitled to recover for injuries received by getting creosote in his eyes. He was not informed by the master of the danger and had no knowledge himself. I respectfully submit that this case should be affirmed. I think the complainant below would have been entitled to a peremptory instruction if the case had been in circuit court, but if not and the

question of the liability of the master was one of fact, then the learned chancellor below found the facts in favor of complainant, appellee's intestate, and that finding should not be disturbed.

The decree was hardly compensatory, and if the unfortunate servant was in any sense negligent, that has been charged for in the decree rendered. But I submit the master was negligent, the servant was not, and was injured by the negligence of the master and is entitled to recover therefor.

HOLDEN, J., delivered the opinion of the court.

This is a suit by attachment in chancery against the appellant, Crossett Lumber Company, a foreign corporation, and certain other persons named as garnishees.

The appellant, Crossett Lumber Company, was engaged in the business of manufacturing, selling, and constructing silos. The complainant, Land, a man thirty-five years of age, was a contractor and builder by profession and trade. He had been engaged in his trade as carpenter and contractor for about ten years prior to the injury complained of in this case. He was a man of considerable education and experience. The appellant company employed him to superintend the building and construction of certain silos at different points. A book of instructions was furnished him showing the proper method of constructing a silo. Amongst other things in the book was a reference to the use of a certain preparation of asphaltum and creosote substances to be applied to the bottom of the staves to be used in the building of silos.

The complainant, Land, in the course of his employment as superintendent of the construction of the silos, was instructed that the ends of the staves resting upon the cement foundation of the silo should be creosoted

before the staves were driven to their places in the grooves of the silo. At first the creosote was applied to the ends of the staves with a brush; but, this method of application proving faulty in the erection of one of the silos, the agent of the appellant company instructed Land to dip the ends of the staves in the creosote instead of using the brush. In pursuing this method a stave was dipped about six inches into the bucket of creosote preparation, and, before it drained off, *was* placed in the groove and was struck by one of the employees working under Land, and driven into its grooved place, whereupon a drop of the creosote preparation flew from the stave into the eye of the appellee, permanently impairing his eyesight, for which injury the trial court awarded a decree for two thousand dollars.

The suit for the injury is predicated solely upon the ground that the appellant company was negligent in failing to instruct Land that the creosote preparation used on the ends of the staves was dangerous in its use and would injure him if it should fly off of the staves into his eye; and that the failure to inform him of this danger, coupled with the fact that the agent of the appellant company had instructed Land to dip the ends of the staves in the preparation, instead of putting it on with a brush, and thereby causing a surplus quantity of the preparation to accumulate on the ends of the staves thus making it possible for it to fly off into his eye, constituted negligence on the part of the appellant company, and caused the injury complained of.

The testimony in the record is undisputed that at the time of the injury Land was acting as superintendent of the work and had full control and direction of the dipping of the staves in the creosote and the driving of them into the groove position. When the stave was struck and driven by the employee, under Land, he failed to shut his eyes or turn his head away from

the creosote stave, and a drop of the creosote flew into his eye. The agent of appellant company was not present at the time of the injury.

It appears without dispute that Mr. Land was a man of intelligence and had many years or experience as a contractor and builder; therefore we think he not only was bound to know that the preparation used on the staves contained creosote, because he could see and smell it, but in addition to this it is shown that the book of instructions, which he testified that he had read carefully, specifically called his attention to the use of the creosote preparation on the ends of the staves in the construction of the silos. Undoubtedly, Mr. Land must have had, under these circumstances, definite knowledge that the preparation he was using on the staves contained creosote which would burn the skin or injure the eye if any portion of it should come in contact therewith.

It is further shown by the undisputed proof that Mr. Land was experienced in building and construction works, and was competent; therefore it is reasonable to conclude that ordinary observation would have made obvious the danger incident to the use of the creosote preparation.

The employer is not bound by law to give instructions to an employee who from intelligence and experience, or knowledge, is able to appreciate the danger of the employment which he has undertaken. The danger here was an ordinary hazard of the employment, of which the appellee must have had knowledge. He not only knew of the danger from the common observation of an experienced and intelligent person, but he had knowledge from the discussion of the use of the creosote in the book of instructions which he had read and followed in his employment.

We do not think that the appellant company was guilty of negligence under the proof in the case. It was

121 Miss.—54.

an unfortunate accident, which probably might have been avoided had the appellee been more prudent. *Railroad Co.* v. *Downs,* 109 Miss. 142, 67 So. 962; *Hanel* v. *Obrigewitsch* (N. D.), 168 N. W. 45, 9. A. L. R. 1029; 18 R. C. L. 570; Labatt's Master and Servant, vol. 1, section 239; *Y.& M. V. R. R. Co.* v. *Perkins,* 108 Miss. 111, 66 So. 273.

In view of the conclusion reached above, the decree of the lower court must be reversed, and judgment entered here for the appellant.

*Reversed, and judgment here for appellant.*