## BROWN *v.* COLEY.

(Division B.   Jan. 8, 1934.)

[152 So. 61.   No. 30902.]

Engle & Laub, of Natchez, for appellant.

Kennedy & Geisenberger, of Natchez, for appellee.

Argued orally by **Charles F. Engle**, for appellant.

**Griffith, J.,** delivered the opinion of the court.

Appellant was engaged in the building of a concrete bridge, and appellee was employed by appellant as a laborer in and about the operation of a concrete mixer. The water to use in the concrete mixer was pumped from the adjacent creek by means of a small gasoline engine. Because of the nature of the work and the temporary character of the location of the machinery necessary to be used therein, this gasoline engine was of a compact construction, the gasoline tank thereof being in close proximity to the flywheel, the electrical sparking apparatus, and the other essential parts of the motor. The tank was filled by pouring gasoline therein through a small opening about one and one-half inches in diameter. The proper way to pour in gasoline was by the use of a funnel, which appellant had furnished for that purpose, and to do otherwise would waste the gasoline, and would create a danger from the likelihood that the wasted gasoline would become ignited by the electrical spark.

On the occasion in question appellee, at the request or order of one Baker, a fellow servant whose duty it was to assist in the operation and care of the gasoline engine, attempted to fill the tank by pouring gasoline from a bucket into the small opening in the tank without the use of the funnel, and while the motor was running. Some of the gasoline wasted and became ignited. The fire was thus communicated to the bucket, and in the effort to escape therefrom appellee was severely burned.

The main contention of appellee, as shown by his dec-

laration and by the only instruction requested by him on the issue of liability, is that the master had failed to furnish him with a reasonably safe place in which, and with reasonably safe appliances with which, to work. The proof is insufficient, in fact there is no proof, to bring this case within the safe place to work doctrine. In Seifferman v. Leach, 161 Miss. 853, 858, 138 So. 563, 564, it was said: "The ground of liability in respect to unsafe places to work is not danger, but negligence. The rule is one of reason. There are many places in and around machinery which are dangerous and cannot be made otherwise. Those who work there, work in unsafe places, but this does not make the master liable as for furnishing an unsafe place in which to work." If the rule were otherwise, employees working at or near exposed saws in a sawmill would be entitled to recover for that reason alone, because when so working they would be in places of danger. Such is not the rule, as see, for instance, Vehicle Woodstock Co. v. Bowles, 158 Miss. 346, 128 So. 98. And upon similar principle, the case cannot be sustained on the alleged ground that the master failed to use reasonable care to furnish the servant with reasonably safe tools and appliances.

The true rule in the respects mentioned is that when the master has taken reasonable care to furnish a reasonably suitable and safe location for the doing of the particular work and has there installed the ordinary and generally approved equipment, suitable and proper for the place and for the work of the kind there being done and this equipment is in adequate repair, and he has furnished the appliances easily to be used in connection therewith which when used will render the operation as safe as may reasonably be done, considering the nature of the work and the character of the machinery appropriate thereto, the master has performed his duty, in so far as concerns the doctrine of a safe place to work and

of safe appliances with which to work, although there still be danger in the work.

There is nothing in the evidence in this case which asserts that the location of the place was dangerous or that the equipment furnished by the master was other than the ordinary and approved equipment, proper and suitable for the place and for the work then and there being done, no evidence that it was out of repair, and it was undisputed that the master had furnished the funnel to be used in filling the tank, that the servant knew of this, and that if the servant had used this funnel the operation would have been reasonably safe. "It is well settled that if the master provide a safe means or method for doing certain work, and the servant elects to use different and dangerous methods, he cannot recover, for the reason that such acts become the negligence of the servant and not that of the master." Stokes v. Adams-Newell Lbr. Co., 151 Miss. 711, 715, 118 So. 441, 442.

It is urged, however, that although a funnel was provided for doing the work of filling the tank, the master knowingly permitted his servants to do the work without the use of the funnel, and that the master is therefore liable for permitting the prevalence of a dangerous method or system. When the master has furnished a suitable place in which to do the work and the ordinary, proper, and suitable equipment and appliances kept in good order with which to work, then as to any further duty owed by him, whether the inquiry be in respect to the adoption of a system or method, the promulgation and enforcement of rules and regulations for the maintenance of a reasonably safe method or system, or in regard to warning his servant of dangers, the answers to the inquiry are found to be grouped, in general, under two principal and controlling heads, as follows: If the servant is a mature and sensible man of some experience in the character of work there being done, the obligation to look after and to take care of himself as to all obvious

or manifest dangers in the details of the work is upon the servant, and the duty of the master exists and is operative only as to nonobvious dangers. In regard to such a servant and in respect to obvious or manifest dangers arising in the details of the work, the master is liable only when he fails to furnish the usual and proper instrumentalities in proper repair which if used, and properly used, will to a reasonable extent obviate the danger, or where he affirmatively orders the servant to omit the safe way and to perform the work in the unsafe manner, the order of the master so to do being given either at the particular time, or at previous times, and thence the improper and unsafe method has been pursued in virtue or by the force of the previous affirmative orders. If he fails to furnish the usual and customary instrumentalities, the master has not supplied the conditions which will enable the servant to take care of himself, and if the master expressly and affirmatively order the servant to omit the safe method and to do the work in a dangerous way, he has waived, or rather has usurped, the duty otherwise resting on the servant and, to use a common term, he is estopped to assert that the duty to avoid the obvious danger was upon the servant, unless the danger is so imminent that no person of ordinary prudence should encounter it, even under orders.

There is no evidence here that the dangerous act done by the servant was at the present or previous orders of the master. The testimony of the master was that he had given orders not to pour the gasoline without the funnel, to which appellee replied only that he had never heard of such orders, and that, if given, they were habitually disregarded with the master's knowledge. Appellee testified that he poured the gasoline as he did at the present order of Baker. But Baker was only a fellow servant as appellee himself admits, and Baker's assumed authority to give the order and the voluntary recognition of that order by appellee does not bind the master, as

was held upon the precise point in Gulfport & M. Coast Traction Co. v. Faulk, 118 Miss. 894, 80 So. 340. See, also, Natchez Co. v. McLain (Miss.), 33 So. 723. And as to the contention by the servant in this case that the master either saw him pouring the gasoline without the funnel or was near enough to have seen him, and that the master should be held liable because he did not interfere, we say only, as has in effect already been said, and in similar effect has been said in so many other cases, that when the master has met the conditions aforementioned, he is not the obligatory guardian of the servant as to ordinary and obvious dangers but the servant must be his own guardian.

The rules of law in respect to the obligation of the master to adopt and put into operation an adequate method or system for the safety of his servants are, in all substantial particulars, the same as those dealing with his obligation as to the promulgation and enforcement of rules and regulations for the maintenance of a safe method or system. And that obligation has been expressly defined by this court in Tatum v. Crabtree, 130 Miss. 462, 94 So. 449, 451, as follows: "A master is not required by law to promulgate rules governing the performance of their duties by his servants simply because the work about which such servants are engaged is dangerous to life or limb; it is only where, in addition to being dangerous, the work of the servants is also complex, and the conditions which may arise are uncertain and obscure. If the work is simple in character and free from complexities, the master is under no obligation to adopt rules. In other words, where the danger is apparent to all, and the duty of the servants to avoid such danger is manifest, no rules are required." See, also, Reed v. Ridout's Ambulance, 212 Ala. 428, 433, 102 So. 906.

The attempt of the servant without the use of a funnel to pour gasoline out of a bucket into a small hole in the tank, near the electrical equipment of the engine while

the engine was running was an act which, to any sensible, adult person acquainted with the volatile and highly inflammatory character of gasoline, would be known to be a dangerous method, it would be obvious. The servant admits that he knew this; and it seems to us that it is such a fact as would not involve any complexity or uncertainty or obscurity to a person who had ever worked around gasoline motors as the servant admits he had done, not only in this service but in previous experience. Moreover, the handling and use of gasoline have become so general, so much a part of the daily observation and experience of all adult persons, so much a matter of conscious knowledge to all of mature age who will open their eyes, that there could be no well grounded basis of justice now to hold that its use, in the manner shown in this case, involves that which is either complex or uncertain or obscure. It would be going too far, as we think, to hold that there is any complexity in the pouring of gasoline out of a bucket through a funnel, or without a funnel, into a hole in a tank, or that the conditions which would arise therefrom so far as concerns the danger thereof would be uncertain or obscure, for those terms refer to situations or conditions wherein it is not to be fairly assumed that the servant knew or understood or appreciated the likelihood of the danger in doing what he did, the reference is to nonobvious dangers. The case is therefore controlled by the principles laid down and discussed and illustrated in the Tatum v. Crabtree Case, supra. See, also, Yazoo & M. V. Railroad Co. v. Downs, 109 Miss. 140, 67 So. 962; Crossett Lbr. Co. v. Land, 121 Miss. 834, 849, 84 So. 15; Dobbins v. Lookout Co., 133 Miss. 248, 97 So. 546; Poplarville Lbr. Co. v. Kirkland, 149 Miss. 116, 122, 115 So. 191, and the recent case decided by Division A, Eastman Gardiner Hardwood Co. v. Hugh Chatham, 151 So. 556, where the applicable principles are very clearly and firmly enunciated.

Reversed and decree here for appellant.