## PROCTOR & GAMBLE DEFENSE CORPORATION v. BEAN et al.

### No. 11069.

Circuit Court of Appeals, Fifth Circuit.

Jan. 16, 1945.

O. W. Phillips and Forrest B. Jackson, both of Jackson, Miss., for appellant.

Thomas Fite Paine, of Aberdeen, Miss., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The petition filed in the state court for death damages was in two counts. The first count [1] was based on negligence of the defendant in failing to furnish safe tools and appliances, to-wit, suitable and safe priming cans to be used in the priming with gasoline of internal combustion engines. Count Two [2] charged negligence in not providing a safe can and in not promulgating safe rules for use of gasoline in priming.

The cause removed to the federal court, defendant, on November 11, 1943, filed its answer separately to each count. It answered Count One by denying the allegations of negligence and affirmatively setting out how the accident had occurred.[3] Answering Count Two, defendant denied that

[1] It alleged: (1) that deceased, a mechanic's helper, was called upon by the master mechanic to bring him gasoline to be used in priming; (2) that no safe priming can was furnished by defendant, and deceased brought the gasoline in an open can which was unsafe and unfit for use in priming; (3) that the deceased then stood at the door of the cab in which the master mechanic was working, awaiting further instructions; (4) that the master mechanic negligently and carelessly poured gasoline from the open can either into the carburetor or into the prime cup on the engine, negligently spilling a part of the gasoline on the machinery and floor of the cab; that he then attempted to start the starter which cranked the engine; that the engine ran for approximately a minute and then stopped, whereupon the master mechanic again primed the engine with gasoline from the open can and when he attempted to start the engine by stepping on the starter, the engine backfired causing flames from the cylinder of the engine to come back into the carburetor; and (5) that this resulted in the gasoline which had been spilled on the engine becoming ignited and also ignited the gasoline in the open can, and said master mechanic carelessly and negligently threw the flaming can of gasoline from the door of the cab onto the face and head of deceased.

[2] It alleged: (1) that the method of work followed by the master mechanic in priming the engine with an open can was an inherently dangerous method of work and most likely to cause personal injury to all employees engaged in it; (2) that this method was known to the defendant, or it was charged with notice of it, yet it made no rule prohibiting the dangerous method of work, nor did it correct or stop it, by furnishing reasonably safe priming cans; and (3) as a result of such negligence, the gasoline in the open can caught on fire from backfire from the engine while it was being started by the master mechanic, and the can of flaming gasoline was thrown by the master mechanic out of the cab door onto deceased.

[3] It alleged: that one Monts, a mechanic, was working on a Ford motor, and desiring to start it, he requested deceased, his helper, to bring him some gasoline to prime the carburetor; that the deceased went into the repair shop and returned with a small tin can container in which there was about a pint of gasoline; that in accord with the usual and customary method, Monts attempted to start the motor by priming the carburetor and in some manner the can of gasoline became ignited and fire flashed up all over the cab and clothing, including the person of Monts, and in an effort to protect himself and the property, then in his charge and under his control, Monts involuntarily threw the can of burning gasoline out of the cab and accidently spilled the burning gasoline over deceased; and that the acts of said Monts were the acts of a co-worker with

the method of work used by Monts was an inherently dangerous method of work, alleged that it was the method adopted by the deceased from his long experience and knowledge in that particular work, and then set out how the accident had occurred.[4]

Thereafter, on April 8, 1944, defendant procured an order permitting it to file and it did file, an amended answer nunc pro tunc as of the day of the filing of the original answer. In it defendant, answering each count separately, denied all of the charges of negligence and pleaded affirmatively to each count.[5]

On the trial of the case, no eye witness to the accident testified, and the record, aside from the pleadings, was completely silent as to how the injury occurred. The only testimony remotely relating to the occurrence was the testimony of one Wait.[6]

---

deceased, and the defendant was not liable for his negligence,

[4] It was alleged that deceased, without direction or instruction to do so, obtained the can of gasoline and delivered it to Monts for the purpose of priming the motor in the same manner and method as that used and recognized as a proper method and manner to be used by the deceased; that the defendant was not required to adopt any rule or regulation in reference to said work since deceased was well acquainted with the method and manner of doing the work then being performed, and selected his own manner of doing it; and that if there was any negligence, it was the negligence of both Monts and deceased, co-workers, and defendant was not liable therefor.

[5] Answering Count One it alleged that at the time of the occurrence Monts was employed by defendant as a mechanic and Bean, the deceased, as a helper; that Monts working on a Ford motor installed in a drag line, requested Bean to bring him some gasoline to prime the carburetor so that he could start it; that Bean went into the repair shop and shortly returned, handing Monts a small tin can container, selected by Bean without any direction from any other person, in which there was about a pint of gasoline; that Monts, without first priming the carburetor and motor and then setting the can a safe distance away, attempted to start the motor by priming the carburetor by pouring the gasoline into it while operating the starter to start the motor; that as a result solely of Monts' action in so doing, the can became ignited and in an effort to protect himself, he threw the burning contents on deceased; that Monts and Bean were co-workers; that the negligence of Monts was that of a fellow servant and was the sole and independent cause of the injury.

Count Two affirmatively alleged that the method used was one adopted by deceased; that he, without direction to do so, obtained the can of gasoline and delivered it to Monts for the purpose of priming the motor and the said Monts

used the can in the manner set forth in paragraph 3 of the answer to Count One, by pouring the gasoline from the can into the carburetor and stepping on the starter, which plan and method had not been brought to the attention of the employer, but was a method solely and only adopted and used by Monts, of which the defendant had no notice, and the negligence was solely and only that of Monts, and that the defendant was not required to adopt any rules or regulations with reference to the work since Bean was an experienced operator and the defendant did not have any knowledge that Monts would use the can in the manner he did use it, and the injury was, therefore, caused not by the negligence of the defendant but solely by the negligence of Monts, or Monts and Bean, co-workers.

[6] He testified that he was working on the night swing with Bean; that he was fixing a flat in the west end of the building; Mr. Bean and two others were working on a motor that they were welding inside the building; that when he got the tire he was working on fixed to the point where he could get a drink, he met Bean in the middle of the building with a can in his hand going toward the back. It was an oil can or Prestone can. About one-third had been cut off at the top; that when he met him he had it in his hand going to the back of the building, and he told Wait there was a truck at the front wanted gasoline and it was Wait's and Bean's duty to fill up the trucks; that while he was doing this, a guard hallooed from his right that there was a "nigger" on fire; that when he got to the northwest corner of the building, he saw a body there about 15 or 18 steps from the drag line, lying face down; that some of the boys said they got there as quickly as they could, and Bean said, "Yes, but you didn't get there quick enough. I got too much"; that on the way to the hospital Bean said he didn't know why that boy threw it on him.

On cross examination, he said he didn't know what Bean had in the can, he was going toward the drag line where Monts was working.

The rest of the testimony was with reference to what was a safe and what a dangerous way to prime motors; as to safe or dangerous cans to be used in connection therewith; as to whether particular cans were furnished for that use by defendant; and whether there were any instructions given by defendant as to the kind of cans to be used. Bean's father, a garage owner, testified that his son was thoroughly skilled in the use of gasoline and knew the danger in using an open can to prime; that there would have been no danger from using an open can to prime the carburetor if the gasoline had been poured in and then the can set down at a safe distance before attempting to start the motor. At the conclusion of plaintiff's evidence, defendant moved for a verdict on the ground that there was no substantial evidence to support recovery. This motion denied, defendant rested without offering any evidence and renewed its motion for a directed verdict. This motion was overruled and the district judge, on the theory, as shown in his charge, that the allegations of the defendant in *its original answer were admissions and obviated the necessity of proof,* submitted the case to the jury as though there was evidence as to how the injury occurred.

■ This will not at all do. Defendant had admitted none, but had denied all, of the allegations of negligence in plaintiff's petition. The answer which the court relied on as containing admissions had been completely superseded by an amendment;[7] none of the allegations contained in the superseded pleading were set out in the amended pleading or referred to therein, and the plaintiff could not, therefore, without offering it in evidence as an admission, avail himself of anything in the original answer.[8]

· ■ ■ The record standing thus, all that it shows is that Bean was walking through the building toward the rear with a can in his hand (no one testified as to what was in the can); that he was later found seriously burned; and he said he didn't know why the boy had thrown it on him. How the accident occurred is left entirely to conjecture, and plaintiff thus failed to discharge its burden of showing that the deceased came to his death through the negligence of defendant. Defendant was therefore correct in saying in its motion that there was no evidence upon which a jury could properly proceed to find a verdict for the plaintiffs against the defendant, and the judgment must be reversed for the error in refusing its motion. Because, however, of the evident confusion on the trial of the case as to the status and effect of the pleadings, particularly of defendant's original answer, and the effect of matters alleged in it as admissions (appellees devote a good part of their brief to pointing out these admissions as evidence in their favor), we do not think that the judgment should be reversed with directions to enter judgment notwithstanding the verdict. We think it should be reversed for a new trial for the purpose of determining on the evidence, instead of on the pleadings, what the facts really are.

■ In view of the retrial here ordered, we think that we should say that while it is the law in Mississippi that the master owes the duty to promulgate rules where the work is dangerous and the conditions are obscure or complex, no such duty exists in regard to the use of simple tools and appliances or where conditions are neither obscure nor complex,[9] and that unless the evidence changes on another trial, it is quite clear that the defendant was under no special duty to promulgate rules, With regard to the negligent or careless use of an open can of gasoline in priming a carburetor, if the accident occurred, as plaintiffs pleaded that it did, because "the master mechanic negligently and carelessly poured gasoline from the open can either

[7] 41 Am. Jur. Sec. 313. "An amended pleading which is complete in itself and does not refer to or adopt a former pleading as a part of it, supersedes the former pleading. The original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." Washer v. Bullitt County, 110 U.S. 558, 4 S.Ct. 249, 28 L.Ed. 249.

[8] It is sometimes held that the original pleading on the filing of an amended pleading ceases to be a part of the rec-

ord, and cannot be used even as evidence. It is ordinarily held though that pleadings superseded by amended pleadings may to a limited extent be admissible in evidence. 41 Am. Jur. Sec. 314.

[9] Brown v. Coley, 168 Misc. 778, 152 So. 61; Eagle Cotton Oil Co. v. Pickett, 175 Miss. 577, 166 So. 764, 765; Curry & Turner Const. Co. v. Bryan, 184 Miss. 44, 185 So. 256; Scott Burr Stores Corp. v. Morrow, Miss., 180 So. 741; Albert v. Doullut & Ewin, 180 Misc. 626, 178 So. 312.

into the carburetor or into the priming cup, negligently spilling a part of the gasoline on the machinery and floor of the cab, then he stepped on the starter which cranked the engine, and the engine ran for a minute and then stopped, then he primed the engine with gasoline from the open can, then stepped on the starter again, with the result that the engine backfired, which resulted in the gasoline which had been spilled on the engine becoming ignited, and igniting the gasoline in the can, and said Monts then carelessly threw said flaming can onto Bean", defendant would not be liable because the act of Monts would have been solely responsible for the injury. Newell Contracting Co. v. Flynt, 172 Miss. 719, 161 So. 298. In Brown v. Coley, 168 Miss. 778, 152 So. 61, 62, a precisely similar case to this, the careless pouring of gasoline, the Supreme Court of Mississippi has held that an employer does not have to publish rules against negligent uses of a simple nature like this; that it is entitled to assume that the employee will use ordinary care in handling appliances; and that if the injury is the result of failure to do so, the master is not liable. Likewise, if the evidence shows that the accident occurred as pleaded in the defendant's amended answer, that Monts, instead of waiting to start the motor until he had put the can in a place of safety, poured the gasoline into the carburetor with the can not set out of danger away from, but in his hand or close to, the firing part of the motor while he was attempting to start the motor, and the jury believes that this negligence was the sole proximate cause of the injury, that is, that the can could have been used safely, and if it had been, no injury would have occurred, the defendant would not be liable. If, on the other hand, there is evidence, believed by the jury; that the defendant was negligent in not furnishing a safe priming can; that because it was so negligent, the open gasoline can was used; that the use of such can was inherently dangerous; that an accident was likely to result from it no matter if carefully used; that Monts used the can carefully; and that the negligence which was the proximate cause of the injury consisted not in the way and manner the can was used but in using the can at all; then the defendant would be liable for such damages as were attributable to its negligence.

■ The charge took no notice of the possible contributing negligence of Bean, in that he not only chose the can in which to bring the gasoline, but stood near while it was being used in a way he knew to be dangerous. No objection was made to this omission to charge, but we take it that damages, if recovered, might be properly reduced under the Mississippi law of comparative negligence, if the jury should find negligence on the part of the master, and consequent liability, and the jury should be so instructed. The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.