CITY OF LONG BEACH, MISSISSIPPI *v.* SPOONER.

No. 39622 May 9, 1955 79 So. 2d 833

*Don Simmons, Mize, Thompson & Mize,* Gulfport; *Pete Carrubba,* Long Beach, for appellant.

*Aubert C. Dunn,* Gulfport, for appellee.

APPELLANT IN REPLY.

ETHRIDGE, J.

Appellee, Calvin Spooner, brought this suit in the Circuit Court of Harrison County against the City of Long Beach for damages for personal injuries allegedly resulting from the negligence of the appellant City in furnishing him an unsafe place to work and an unsafe tool or appliance. The jury returned a verdict for appellee. We have concluded that appellee failed to show any negligence on the part of the City, that his injury was attributable solely to his own fault, and therefore appellant was entitled to its requested peremptory instruction.

Spooner was an employee of the City of Long Beach, and for two to three weeks had been working on a garbage truck of the city. It was a 1952 Chevrolet two-ton truck, with a Marion Hydropaka garbage collecting body. On each side were sliding doors with handles thereon. The handles were installed on the doors for the purpose of sliding them toward the rear. When this was done, the openings were used for the purpose of dumping garbage in the truck. On the inside of the truck was a hydraulically operated packing or compression plate, which, when not in use, was in a position toward the front of the body. On each side of the exterior of the body near the cab was a lever, which controlled the movement of the packing plate. These levers had three positions, forward, reverse, and neutral. The lever on each side operated in co-ordination with that on the opposite side.

When that part of the interior of the truck opposite the open doors on each side had accumulated a large pile of garbage, the packing plate would be put in operation in the following manner: The truck driver would put it in gear by pulling a lever in the cab while the motor was running, and then one of the men working on the outside of the truck would pull one of the outside levers from neutral to forward position. The opposite

lever on the other side would thereupon automatically be placed in the same position. The packing plate would then begin to move inside of the body toward the rear of the truck and would push the garbage toward the rear and compress it in that position. The compression plate would then automatically stop, and upon the outside levers being put in reverse position, the packing plate would then return toward the front of the body and stop automatically when it had reached the end of its track. The movement of the compression plate was slow and accompanied by loud, grinding noises audible to any one around the truck. This compression plate was rectangular in shape, about 5 x 7 1/2 feet. It occupied almost the full interior width of the body, being about 3/4 of an inch or one inch from each side.

Before the City bought the truck, the mayor and two aldermen made a trip with a salesman to a city in Louisiana to watch the operation of a similar truck. The Louisiana city had installed folding steps on each side of the truck immediately below the openings for the sliding doors. These consisted of two steps, and were solely for the purpose of enabling a man dumping garbage in the truck to stand upon them when the garbage in the truck was piled high. These steps protruded from the side of the truck, and if left down, would be traffic hazards when the vehicle was in motion. When appellant bought its truck, it purchased from the distributor as an optional accessory somewhat similar folding steps for each side. The garbage truck which appellant purchased, and on which appellee was injured, was admittedly a modern and efficient appliance or machine, well adapted for the purpose for which it was designed. There was no handle on the body of the truck next to the door openings. The handles on the door were toward the rear of the truck when the doors were pushed back so that the garbage could be dumped in. The folding steps were not intended to be used for employees to ride upon. They were expected to ride upon the running board oppo-

site the cab, if the truck was going some distance and was not in the process of picking up garbage. If the latter, the men walked alongside the vehicle.

The truck required a three-man crew. Bill Ladner was the truck driver. He was not in charge of the other two men, but simply drove the vehicle as an employee. The other two men worked one on each side of the truck picking up garbage cans at each house, walking up to the truck, dumping the garbage in, and returning the can where the owner had placed it. Napoleon Ladner was doing this job on the left side of the truck, and Spooner on the right side, when appellee was injured on or about March 6, 1953. Spooner is an adult, married, with three children. He is about five feet, three inches in height, and when the garbage began to be piled up in the truck, he would stand up on the folding steps in order to empty the cans into the truck. He had just finished emptying a can when Bill Ladner put the truck in gear to operate the packing plate, and Napoleon Ladner pulled the lever and started the plate moving backwards to pack the garbage.

Napoleon testified that Spooner called out to him and the truck driver to start the packing plate. Spooner did not deny this. The driver said that someone told him to put the truck in gear, but he did not know whether it was Napoleon or appellee. At any rate, the packing plate began moving to the rear of the truck packing the garbage, and it was on its return trip toward the front of the truck when Spooner hopped up on the folding steps and held with his hand on the frame of the door, which was opened. Appellee said that the truck was not moving, but that it was just about ready to move. He admitted that he knew the plate was in motion and was on its return trip to the front of the truck. He said that he thought it had completed its return trip when he put his thumb around the inside of the door frame. However, when appellee jumped up on the folding steps with his thumb on the inside of the door frame, he was mistaken

about the compression plate having stopped, and in completing its motion it amputated appellee's right thumb.

Appellee claims in part that the City was negligent in not putting a handle on the outside frame of the body for him to hold onto, and that because of this omission he had to hold on the door frame. He said that the truck was still, but that his finger was cut just before the truck pulled off. The plate cannot move if the truck is in motion. Appellee admitted that he knew the plate was in motion, but he did not look at the lever. He admitted that when the packing plate was moving he could have seen it. The door was open, and it was right in front of him. He said, "I knew he was packing the trash and it had come back and I thought it was back far enough . . . When I jumped on the truck, I thought it was through . . . It still had a little bit to go."

Appellee said that he thought the compression plate was going to stop before it caught his finger.

Bill Ladner, the truck driver, testified that one of the men told him to run the garbage back, and he engaged the gear. He said that Spooner and Napoleon Ladner always rode on the running board, not on the folding steps; and that Austin, the street foreman, had so instructed them. Napoleon Ladner, who was dumping garbage on the left side of the truck, did not see the accident. He said that appellee told him and the driver to run the compressor back, and that they did so. When he pulled the outside lever, he saw appellee standing back of the truck out of the way. Austin told him and appellee to never ride on the folding steps; that they were solely for dumping garbage into the truck. When they rode, it was on the running board.

Appellee testified that he had not been instructed about anything, except that he was told to pick up the garbage and throw it into the truck. He said that no one told him where he was to stand, and that he watched the other men and they used the folding steps, that he did not get on the running board because it blocked the

driver's view. The driver denied this. The street foreman, Ernest Austin, testified that he instructed appellee about the truck, and told him never to ride on the folding steps, but only on the running board; that he had instructed appellee and the others to stand to the side when the compressor was moving, to walk along opposite the truck when picking up garbage, and to ride on the running board only when the truck was going some distance.

It is undisputed that Mayor Hooker, the street commissioner, and Ernest Austin, the street foreman, had no notice or knowledge of any asserted custom for the men to ride on the folding steps. Appellee was the only witness who testified that he and the other men rode on the folding steps. But assuming that to be true, no notice or knowledge thereof was transmitted to anyone in authority for the City. The garbage truck was in good mechanical condition, and was the newest and safest type for the use for which it was intended.

 ██ The City was under a duty to use reasonable care to furnish appellee with a reasonably safe place in which to work and a reasonably safe tool or appliance. ██ The test is well stated in Brown v. Coley, 168 Miss. 778, 783, 152 So. 61 (1934):

"The true rule in the respects mentioned is that when the master has taken reasonable care to furnish a reasonably suitable and safe location for the doing of the particular work and has there installed the ordinary and generally approved equipment, suitable and proper for the place and for the work of the kind there being done and this equipment is in adequate repair, and he has furnished the appliances easily to be used in connection therewith which when used will render the operation as safe as may reasonably be done, considering the nature of the work and the character of the machinery appropriate thereto, the master has performed his duty, in so far as concerns the doctrine of a safe place to work

and of safe appliances with which to work, although there still be danger in the work.''

██ ██ We think that the City complied with its responsibilities in these respects. The ground of liability is not danger, but negligence. And since there is no evidence that either the foreman or the mayor or anyone else in authority for the City knew of any alleged custom of appellee and the other men to use the folding steps — and in fact appellee's coworkers testified to the contrary — no negligence can be imputed to appellant in this respect.

According to appellee's own testimony, he knowingly placed himself in a position of obvious and manifest danger, and his negligence was the sole proximate cause of his injury. He admitted that he knew the packing plate was moving and was on the return trip; that he could have seen it moving if he had looked at it right in front of his head; and that he could have seen that the lever was in the position indicating movement if he had looked at it. He failed to do any of these things. But even without looking, he admitted that he knew the plate was moving. Yet he knowingly put his hand in a dangerous place.

██ ██ The rule applicable to these undisputed facts is stated in Brown v. Coley, supra, as follows: ''If the servant is a mature and sensible man of some experience in the character of work there being done, the obligation to look after and to take care of himself as to all obvious or manifest dangers in the details of the work is upon the servant, and the duty of the master exists and is operative only as to non-obvious dangers. In regard to such a servant and in respect to obvious or manifest dangers arising in the details of the work, the master is liable only when he fails to furnish the usual and proper instrumentalities in proper repair which if used, and properly used, will to a reasonable extent obviate the danger . . .''

See also Anderson-Tully Company v. Goodin, 174 Miss. 162, 163 So. 536 (1935); Prosser, Torts (1941), pp. 386-387, 505-518; 56 C. J. S., Master and Servant, Secs. 431, 435, 446 (g), 450; Lyons v. Weems, 76 So. 2d 354 (Miss. 1954).

Reversed and judgment rendered for appellant.

*McGehee, C. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.