### Buckeye Cotton Oil Co. *v.* Saffold.

[87 South. 893, No. 21551.]

MASTER AND SERVANT.  *Cleaning machine in motion, held proximate cause of injury.*

Where a master has provided a perfectly safe contrivance by which machinery might be started or stopped at will, and an employee, who was in sole charge of the operation of the machinery, started it in motion, and then without necessity undertook to clean it while it was in motion, and as a consequence was injured, the act of the employee in selecting a highly dangerous method of performing a duty when a perfectly safe method was equally available was the proximate and sole cause of the injury.

APPEAL from circuit court of Leflore county.

HON. S. F. DAVIS, Judge.

Action by Boyd Saffold against the Buckeye Cotton Oil Company. Judgment for plaintiff, and defendant appeals. Reversed, and cause dismissed.

*Sam L. Gwin* and *B. L. Mayes,* for appellant.

We respectfully submit that the plaintiff's testimony even if considered alone, and stretched to its utmost, wholly fails to establish any liability on the part of the defendant for his regretable injury.

We submit in the first place, that the mere statement of the plaintiff that the dust and lint which fell from the press room into the basement could have been prevented from so doing, unaccompanied by any explanation other than his unexplained remark of "by building a better track," is insufficient to establish negligence. And that it is obvious, even from a consideration of the plaintiff's testimony alone that his injury was simply an unfortunate accident in so far as the defendant is concerned, and that this case is plainly to be classified with the case of *Iler* v. *Nix,* 114 Miss. 293, 75 So. 12; *R. R. Co.* v. *Downs,* 109 Miss. 142, 67 So. 962; *Y. & M. V. R. R. Co.* v. *Perkins,* 108 Miss. 111, 66 So. 273; *Crossett Lumber Co.* v. *Land,* 84 So. 16.

But conceding, for the purpose of this argument, that the bare statement of the plaintiff just referred to is sufficient to and does tend to show negligence on the part of the defendant, it is perfectly obvious and manifest on the face of the plaintiff's testimony that the negligence of which he complains had no connection in point of fact or in point of law with his injury; that it did not contribute to his injury in whole or in part, but that, on the contrary his own deliberate and voluntary act of starting the press and then cleaning the running machinery (or of cleaning the running machinery without stopping the press) was the sole and approximate cause of his injury.

We submit that, notwithstanding our contributory negligence statute, it is not always the case that a negligent act imposes legal liability, and we make this statement having before us the remarks of this court in the case of *Ragland* v. *Native Lumber Co.,* 78 So. 542.

It may be conceded (though this court merely says there may be some merit in the argument) that a plaintiff is not debarred of recovery by his negligence unless his negligence is "the sole and approximate cause of the injury." The law, conceding it so to be, is an authority in the defendant's favor; for it is obvious that in this case the plaintiff's negligence was the sole and approximate cause of his injury. There was no causal connection whatever between the defendant's negligence and the plaintiff's injury. The only negligence complained of was the failure of the defendant to prevent the dust and lint from falling from the press room into the basement. But the result of such negligence extended no further than the clogging of the press. There all causal connection ceases. The clogged condition of the press did not bring about or contribute in the slightest degree, in fact or in law, to the plaintiff's injury. His injury was solely the result of the plaintiff's own act in not cleaning out the cotton before he started the press, or of not stopping the press before he attempted to do so, and of his unheard of act of attempting to clean a piece of moving machinery with his hands. Not only is it true that such act of the plaintiff himself was the sole and approximate cause of the injury but this court in a clear and lucid opinion has already adjudicated that such is the case.

The decision of this court to which we refer is *Ovett Land & Lumber Company* v. *Adams,* 109 Miss. 740, 69 So. 499. In the case of *Ovett Land & Lumber Company* v. *Adams, supra,* the facts were as follows: "The appellant (defendant below) owned and operated a saw mill. Logs were hauled from the camps up an incline to the saw shed by means of a cable attached to the log car. A belt ran over a spool wheel, to which the cable was attached, and while the appellee was hauling a log up the incline he noticed that the leather belt was slipping off of the wheel, and without stopping the machinery he placed his foot against the rapidly moving belt in an effort to push it back into place on the wheel, and a lip or projection in said belt

struck against his foot as the belt revolved, threw him down and injured his leg . . . Appellee contends he was confronted with a sudden emergency, and was attempting to keep the belt from slipping off the wheel, and thereby prevent an accident which would have resulted in an injury to himself and to the machinery. The appellant contends that the defective belt was not the approximate cause of the injury, and that the appellee should have pulled a lever and stopped the machine before attempting to adjust the belting."

In the lower court the appellant here, defendant there, requested a peremptory instruction which the court refused and the case went to the jury and the jury found for the plaintiff. It was established in the lower court and conceded in this court that the belting was defective and the briefs of counsel, as they appear in the record, were devoted wholly to a discussion of whether the plaintiff's act failing to stop the machine was the sole and proximate cause of his injury. The opinion of the court is very brief and we will set it out in full:

"COOK, J., delivered the opinion of the court. As we read the record in this case, the court should have excluded all of the evidence offered by the plaintiff, and directed a verdict for the defendant. The alleged defect in the belt was not the cause of the injury. The lip, on the belt was harmless, so far as the plaintiff was concerned. The master provided a perfectly safe contrivance to operate the machine, and instead of using the safe means provided the plaintiff undertook to stop the machine by pressing his foot on a rapidly moving belt. This act of his was the approximate and sole cause of his injury. Reversed and cause dismissed."

So it appears that in the case of *Ovett Land & Lumber Company* v. *Adams,* this court has expressly decided that when a machine is equipped with an appliance for stopping and starting it, and the employee attempts to repair a defect in the machine while the machine is running, with-

out utilizing the appliance and stopping the machine, his failure to stop the machine is the proximate and sole cause of his injury."

And this court will find, by examining the briefs of counsel in that case, that the case arose after the passage of our contributory negligence statute and that a large portion of both briefs was devoted to a discussion of whether the fact the belt was defective (in other words that defendant was negligent) would permit plaintiff to recover in view of our contributory negligence statute, notwithstanding the act of the plaintiff in failing to stop the machine.

The case of *Ovett Land & Lumber Co.* v. *Adams,* so clearly and unquestionably decides this case that it would be vain to indulge in an extended argument to demonstrate that fact. It appears beyond all doubt that the press was equipped with appliances for starting and stopping it, and that the plaintiff could have stopped the press and cleaned out the cotton in perfect safety. In the case of *Ovett Land & Lumber Co.* v. *Adams,* the court expressly decides that where the machinery is so equipped and the employee attempts to remedy a defective part of the machinery, without stopping the machinery, his failure to stop the machinery, is the "sole and proximate cause of his injury." If any other authority than the case of *Ovett Land & Lumber Co.* v. *Adams,* is necessary, there are several other decisions of this court to the same effect. Such cases as this do not frequently find their way to this court but there are several cases where conduct of the plaintiff was substantially similar to the conduct of the plaintiff in this case, and in no such case has the court allowed a recovery to stand.

Two cases of this character are the case of *Natchez Cotton Mill* v. *McLean,* 33 So. 723, and *Newman Lumber Co.* v. *Dantzler,* 64 So. 931.

In the McLean case the plaintiff attempted to collect some grease from a pair of revolving cog wheels and her hand was caught in the wheels, and though a young girl

this court declined to allow a recovery. In the Dantzler case the court holds that there can be no recovery where the servant attempted to pull a ravel strip off of a belt without disconnecting the machinery, and that the refusal of an instruction to such an effect was a reversable error where one of the witnesses testified such was the case.

And this court will note in the case of *Ovett Land & Lumber Company* v. *Adams, supra,* the plaintiff claimed to have been confronted with, and to have acted under, a sudden emergency, still the court did not allow him to recover. In this case the plaintiff makes no such claim, there is no suggestion of it in his pleadings or his testimony.

*F. M. Witty,* for appellee.

There was, as we have attempted to point out, ample evidence to warrant the jury in believing that, while plaintiff was operating defendant's press, the defendant permitted lint, cotton and dust to clog the machinery and to come into the press room in large quantities; that this could, without great inconvenience or expense, have been avoided, but defendant did not do so; that, because of this condition, plaintiff was compelled himself to clean up the cotton and, in so doing, to place his hands into close and dangerous proximity to the running machinery, that this work of cleaning was as much a part of plaintiff's duties as operating the press, made so because the press would not operate efficiently unless it were cleaned and because plaintiff was expressly ordered to do this cleaning; that the only time when plaintiff could do the cleaning was when the machinery was in motion and that such work was plaintiff's regular work for defendant—was extremely dangerous and defendant knew it to be, or could have known by the exercise of reasonable care and diligence; and that the usage and dangerous condition of the place where plaintiff worked brought about the injury.

But appellant says that plaintiff should not have done the cleaning with his hands. The complete answer to that contention is that the jury saw the machinery and the place and, by its verdict, decided that the only way the place could have been cleaned by plaintiff was by using his hands. Certainly the jury was competent to pass upon this question after it had viewed the scene. Again, it will certainly be presumed that plaintiff was adopting the method which to him seemed best in the absence of any instructions from his superiors as to the exact method he should follow. Plaintiff says that it was utterly impossible for him to clean the place while the machinery was still, this being the only method which defendant, according to the record has ever suggested to obviate the danger.

The record does not show any means which was suggested by defendant, whereby the machinery could have been safely cleaned while it was in motion. And in this the case at bar is readily distinguishable from the case of *Ovett Land & Lumber Co.* v. *Adams,* 69 So. 499, so confidently relied upon by appellant. In that case this court reversed and dismissed the cause because: "The master provided a perfectly safe contrivance to operate the machine and instead of using the safe means provided, plaintiff undertook to stop the machine by pressing his foot on a rapidly moving belt." In the case at bar, the only means of safety which defendant claims could have been adopted by plaintiff was to clean the machinery and around the machinery only when it was not being operated. Plaintiff says that this was impossible; that he could do the cleaning only when the machinery was in motion; and the jury has seen fit to accept plaintiff's statement as true. So where is the safe way out which the master has provided?

Appellant also cites the case of *R. R. Co.* v. *Perkins,* 66 So. 273, which was a case where a carpenter sued his employer for not furnishing him a safe place to work and for injuries sustained on account thereof. A scaffold had been built by plaintiff himself from which he was work-

ing, when it fell and injured him. This court, of course, held that the accident was the result of plaintiff's failure to construct the scaffold properly and that his employer could not be held accountable for his own default. In the case at bar, the plaintiff had nothing whatever to do with the lint cotton and dust coming in and clogging the machinery; and that being true the non-delegable duty of the master to furnish him a safe place to work existed in full force and effect.

Defendant pleaded that plaintiff assumed the risk; but of course, if defendant was negligent, as the jury decided, this defense does not avail. Hemingway's Code, section 504, 77 So. 857. If he (plaintiff), were guilty of contributory negligence, this, of course, under our statute, will not bar a recovery. Plaintiff, according to all the evidence, was acting under the orders of his superior, who had a right to control his services, and the doctrine of assumption of risk does not apply to his case. *R. R. Co.* v. *Guin*, 68 So. 78 (on page 80). The very recent decision of this court in the case of *Cecil Lumber Co.* v. *McLeod*, 85 So. 78, is strikingly similar in principle and in facts to the case at bar.

In the case of *Finkbine Lumber Co.* v. *Cunningham*, 57 So. 916, it was plaintiff's duty to oil the saws in defendant's mill, and defendant had negligently permitted trash to accumulate near the machinery, and plaintiff in doing his work and in oiling the saws had to come in close proximity, of course, to the saws, and in so doing, stumbled over the trash and was injured on the swas. In that case also the defendant was held liable for its failure to furnish a safe place for plaintiff to work.

In the case of *Sea Food Co.* v. *Alvis*, 77 So. 857, in the course of his work, plaintiff came near unguarded and dangerous machinery, upon which he was injured, and again the master was held liable. In that case it does not appear that it was absolutely necessary for plaintiff to have come in close proximity to the dangerous machinery, but he did so incidentally in the course of his employ-

ment, and this court permitted his recovery to stand. The case at bar is much stronger than this case just cited, in that the plaintiff here was actually required by the necessity of doing his work properly, and by the orders of his superiors, to place his hands near the unguarded and dangerous machinery, and in so doing his sleeve was caught and he lost his arm.

In the case of *R. R. Co.* v. *Thomas,* 40 So. 257, plaintiff's intestate, and employee of the railroad company, was required by his duties to go upon the top of the train, and while there the train passed under a bridge which defendant had permitted to be too low, and deceased was knocked off the train and killed. There was evidence in that case that the deceased knew of the location of the bridge, and the defendant pleaded contributory negligence, but this court held that in discharging his duties to his master the deceased was put into a place which was unsafe and dangerous, and was injured thereby, and that the verdict of the jury settled the controversy with regard to contributory negligence.

The duties of the master relative to furnishing the servant a safe place in which to work cannot ordinarily be delegated to fellow servants, and the risk relative thereto is not such as is ordinarily assumed by the servant. . . . This is a correct announcement of the law on this subject, and as a matter of law, therefore, on the facts of this case no assumption of risk, nor contributory negligence, can be charged to the deceased employee. It was the duty of the master to use every reasonable effort to see that the place in which these employees worked was safe, and they had a right to assume that this duty would be strictly complied with. *Murray* v. *Natchez Drug Co.,* 66 So. on page 332.

The above language was used by our court prior to the passage of our statute (Hem. Code 504) which abolished assumption of risk where the injuries resulted in whole or in part from the negligence of the master.

In the case of *Brooks* v. *Desoto Oil Co.*, 57 So. 228, the plaintiff was required to work near revolving machinery, upon which was a protruding and exposed screw, and was caught in this screw and injured, as alleged by the declaration. This court said: "That this unguarded set screw constituted a menace to the life and limb of any person engaged in the work being done by appellant at the time of his injury is hardly open to question."

In that case also, contributory negligence of the plaintiff was pleaded by the defendant, but the court held that the master was either negligent as a matter of law, or the question of his negligence was one for the jury. And in passing we desire to call the attention of this court to this language used in that decision: "That this danger could have been easily removed by guarding or sinking the set screw is also equally obvious." This language applies with great force to the facts of the instant case, where there was evidence also that the source of danger could easily have been eliminated by the master.

In the case of *Ennis* v. *Y. & M. V. R. R. Co.*, 79 So. 73, deceased, was required, during the course of his work, to bring his hand in contact with an electric light globe, which was defectively wired, and he was thereby electrocuted. This court held that the employer was liable, as the live wire was unguarded and dangerous.

There is another case, *R. R. Co.* v. *Seamans*, 79 Miss. 106, wherein this court went a long ways in holding that the negligence of the master in failing to provide a safe place to work was the proximate cause of the death of its employee. In that case the railroad company permitted a cotton seed house to remain near its track, and from this house cotton seed were allowed to fall and accumulate, and thereby great numbers of cattle were enticed to the spot. The deceased was a member of a train crew on a train which passed the spot at a high rate of speed, and the train struck a cow, and deceased lost his life. The defendant vigorously contended that the unsafe condition of the place was not the proximate cause

of the injury, but this court refused to sustain that contention, and held that the master had permitted the place to remain unsafe and dangerous, and was liable. The defendant also proved that there were numerous such places along railroad tracks all over the country, thereby resorting to the same defense which is relied upon in this case. It was shown too that members of the train crew knew of this condition which prevailed at the spot where the accident occurred, and that the condition was notorious, but no custom in regard to the condition of such places, and no contributory negligence of the deceased was recognized by this court, and the judgment for damages was upheld.

We will not go further with the citation or discussion of authorities in support of this case, but respectfully submit that those we have mentioned are decisive.

W. H. COOK delivered the opinion of the court.

This suit was instituted by the appellee, Boyd Saffold, against the appellant, the Buckeye Cotton Oil Company, to recover damages for personal injuries alleged to have been sustained by appellee while he was operating a cotton press at appellant's mill, and from a judgment for plaintiff for the sum of one thousand dollars this appeal was prosecuted.

The declaration alleges in substance that appellant owned and was engaged in operating a certain cotton press; that plaintiff was employed by appellant to operate this press; that it was the duty of appellant to exercise reasonable care to furnish appellee a reasonably safe place to work and reasonably safe appliances with which to work; that appellant negligently failed in its duty in this regard, in that it permitted the machinery of the press to become and remain covered and clogged with lint cotton and other debris, so as to hinder the operation of the press and to make it necessary for plaintiff, in order to operate the press, to remove the lint cotton and other

debris from the machinery; that it was extremely dangerous to remove this lint cotton and debris, for the reason that, in doing so, it was necessary for appellee to put his hands into close proximity to the machinery, and between the parts thereof, while the machinery was in motion; that the appellant knew, or by the exercise of reasonable care and prudence could have known, that the machinery became covered and clogged with this cotton and other debris, and that in order for appellee to perform his duty to his employer it was necessary for him to remove this cotton with his hands while the machinery was in motion, and, in so doing, to place his hands in close proximity to the machinery and between the parts thereof; that while said machinery was in motion appellee, in the discharge of his duties, undertook to remove the cotton and debris from the machinery with his hands, and in so doing his left hand became entangled in the machinery and was crushed and torn from his body. Upon motion of appellant, appellee also filed a bill of particulars, alleging that, in attempting to clean the press with his hands while it was in motion, he acted under the instructions of his superiors, the officers of appellant company.

It appears from the evidence that the press, in the machinery of which appellee lost his arm, was a Mounger durable box revolving screw press. This press in its entirety is situated in two rooms, one above the other. The two press boxes are located in the upper room, and a large circular portion of the floor of this press room is attached to the press boxes, and revolves when the press box revolves. Between this circular section of the flooring and the stationary part of the floor there was a small crack or opening, about an inch wide, and it was through this opening that appellee claimed the lint cotton and debris fell into the basement and onto the machinery. In the basement, and directly under the press box, is located the machinery by means of which the cotton in the press boxes was compressed.

This machinery consisted in part of a "crown gear" or "master gear," about three feet in diameter, which was located directly under the bottom of the press box. A small gear, called the "pinion gear," meshed with the crown or master gear, and this pinion gear was attached to a steel shaft about five feet long. To the other end of this shaft was attached a large wheel, called the flywheel, and in side of this flywheel was a friction gear, which was attached to a piece of steel shafting which contained the belt pulley. This friction gear was connected with and controlled by a lever, running from the basement into the press room above, by which the friction gear could be brought into contact with the flywheel, and thus put the machinery of the press in motion. Appellee testified that on the occasion that he was injured he came from the press room above into the basement; that the machinery of the press was not then running; that he started the machinery in motion, and while it was running undertook to clean the gears with his hands, and, when pressed on cross-examination for some explanation as to why he did not clean the machinery before he started it in motion, he replied, "I didn't have time."

There is no contention in this case that there was any defect in the machinery itself, and the only negligence complained of is that the small opening in the floor above the basement was not covered, and as a consequence loose cotton and debris were permitted to fall into the basement and on the machinery, thereby making it necessary for appellee to clean the machinery in order to successfully operate it. The testimony for appellee wholly fails to sustain the allegation that he was instructed to clean the machinery while it was in motion. The only testimony offered by appellee upon this point was to the effect that he was instructed to keep the cotton cleaned up in the basement, while the undisputed testimony of appellee's superiors was that all employees were instructed not to attempt to clean the machinery while it was in motion.

We have reached the conclusion that there was no causal connection between the alleged negligence of appellant and the injury to appellee. The only negligence complained of was the failure of appellant to prevent the dust and lint from falling from the press room into the basement, and conceding, as must be done in the consideration of this question, that it was the duty of appellee to clean the basement and machinery, this duty could have been performed in perfect safety while the machinery was idle. Appellee was in sole charge of the operation of the machinery of the press, and he was furnished with a perfectly safe contrivance for starting and stopping it. There was a lever within easy reach, which was provided for the purpose of starting or stopping the machinery, and appellee was in sole charge of the operation of this lever. He was not confronted with a sudden emergency at the time he was injured, but when he came into the basement the machinery was not in motion, and it could have been cleaned with perfect safety. After appellee had started the machinery in motion, by a simple movement of this lever which was in easy reach, he could have stopped it at any time it appeared to be necessary to clean any part thereof, but instead of selecting the safe method of performing his duties, he chose a highly dangerous method, and as a consequence suffered the injury. We think this act of appellee was the sole and proximate cause of the unfortunate injury.

*Reversed, and cause dismissed.*