ANDERSON-TULLY Co. *v.* GOODIN.

(Division A. Oct. 21, 1935.)

[163 So. 536. No. 31833.]

Brunini & Hirsch, of Vicksburg, for appellant.

Howie & Howie, of Jackson, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is an appeal from a judgment for damages recovered by the appellee for a personal injury alleged to have been sustained by him because of the negligence of the appellant.

One of the assignments of error is that the court below refused to direct the jury to return a verdict for the appellant.

The appellant is engaged in the business of sawing and manufacturing lumber, and the appellee was employed by it to assist in the operation of its machinery for sawing logs into lumber. The saw was situated on the second floor of the appellant's plant, and the logs were carried to that floor by a machine conveyor, from which they were transferred to another conveyor which took them to a carriage by which they were conveyed to and brought into contact with the saw. The power was communicated to these conveyors by a pulley revolved by an endless belt running over a wheel attached to the pulley. This pulley was situated on the ground floor. One of the appellee's duties was to scale the logs when they arrived at the second floor, transfer them to the conveyor which carried them to the saw carrier, which conveyor he operated by means of levers. On the occasion in question the belt around the pulley wheel began to slip, whereupon the appellee went to the ground floor, and while

putting resin or tar on the belt to prevent it from slipping his arm was pulled between the belt and pulley, and he was badly injured.

The appellee's complaint is that the appellant negligently failed to furnish him with a safe place wherein to do his work. The belt was several feet above the ground and could not be reached therefrom. In his declaration the appellee says "that at a former time the said defendant mill company had provided a ladder for the plaintiff or anyone else applying the resin to the belt to climb up so as to reach the belt, but this ladder has been permitted to be taken away and not be replaced, so that it became necessary for the plaintiff to climb upon the frame work and apply the resin without a ladder, that this arrangement without the ladder made it extremely dangerous for the plaintiff or anyone else to apply the resin as it was necessary, and as it was the duty of the plaintiff to do, under the circumstances as above alleged." The framework referred to therein was a trough partially inclosing the log conveyor, which was about four feet from the ground, and by standing on which one would be enabled to reach the belt and apply resin thereto. The ladder referred to was used generally about the plant, and when it was convenient of access the appellee used it to stand on while applying the resin, but when it was not accessible he had been accustomed to apply the resin by climbing up to and standing on the conveyor trough.

On the occasion here in question the appellee made no attempt to ascertain whether the ladder was accessible, but used the trough as a place on which to stand. While standing on the trough, the appellee "caught hold of a place" with his left hand in order to balance himself, and held a lump of resin against the belt about one foot from the pulley wheel, the friction thereby resulting causing the resin to melt and be taken up by the belt. What caused his arm to be drawn under the pulley wheel is not very clear from the evidence. The appellee said

that the two ends of the belt were laced together, "and it (referring, it seems, to the lump of resin) must have hit the lacing and when the belt flew up like that that lacing there slapped my arm into that."

"Q. Between the belt and pulley? A. Yes, sir."

In another place, when asked what caused his arm to be drawn into the pulley, he answered, "Slack in the belt."

The appellee had been in the service of the appellant for several months. According to his evidence, when he was employed, the appellant's foreman told him to report to a man by the name of Williams, who was then discharging the duties which the appellee was employed to discharge, and that Williams would instruct him as to his duties; that Williams told him, among other things, "if the belt started to slip, put resin on it." It does not appear that Williams gave him any directions as to how the resin should be applied. Williams was dead at the time of the trial. The appellant's foreman testified that he did not direct the appellee to report to Williams for instructions, but that on the contrary he himself told the appellee what his duties would be and how to perform them. He also said that applying resin to the belt was not a proper way of preventing it from slipping; and that when the belt slipped it was the appellee's duty to report it, and the slipping would be remedied by another of the appellant's employees. This evidence, of course, cannot here be taken into consideration.

The belt slipped about twice a week, and each time the appellee applied resin to it. According to the appellee, the appellant's foreman had seen him do this several times, but how the resin was then being applied does not appear. Two things would cause the belt to slip: (a) Becoming slack; and (b) the load on the conveyor being too heavy. It does not appear from the evidence that it was more dangerous for one to apply resin to the belt while standing on the conveyor than it would have been by standing on a ladder. In fact, counsel for

the appellee say that "he (the appellee) would have been in an equally dangerous position on the ladder as he would have been and was at the time of the injury." Neither does it appear from the evidence that the conveyor trough was an unsafe place on which to stand. No lump of resin was set apart to the appellee for application to the belt. He says that one could usually be found near the saw, but when not there he would, as he did on the occasion in question, obtain one from another portion of the plant.

A witness for the appellee, who had prior to the appellee's entering the appellant's employment discharged the duties which the appellee was discharging, testified that he had applied powdered resin to the belt when it slipped by raising a loose plank in the floor immediately above the belt and sprinkling the resin thereon with a board. Another witness for the appellee said that the usual way to put resin on the belt was: "You put it on from behind and put it on some sort of board while the belt is running and let the belt pull it off the board like that. If it is loose resin well just pour it on like that, just according to who is putting it on.

"Q. Some put it on one way and some another? A. Yes sir.

"Q. On this belt, which is the safest place to put it on, if you want to put it on with the hand? A. Safest way to put it on is to get back around behind and hold this resin on the belt and jerk the hand away from it if the resin sticks.

"Q. What causes the resin to stick? A. The resin gets warm and sticks and pulls your hand around. . . .

"Q. What effect on a man holding that resin on the belt when that lacing comes by? A. It would jerk his hand like that.

"Q. If he was putting the resin on with his hand when the lacing came by what would it do? A. Jerk his hand around like that and knock his hand around that way.
. . .

"Q. If he is putting that resin on in the middle of the belt it would knock his arm, would it not? A. Knock it just as far as it would go.

"Q. Where does it knock it? A. It will go between the pulley and the belt; go under the pulley. . . .

"Q. Suppose you put your hand just one foot from the pulley with a lump of resin in your hand, that would be an exceedingly dangerous process, would it not? A. Yes sir.

"Q. It would almost be suicide? A. If a fellow didn't know his business, it would get him. . . .

"Q. If you put powdered resin on there, there is no necessity to put your hand up there at all, just throw it on there? A. Yes sir."

The appellee said that it was necessary for him to hold his hand about a foot from the wheel when applying resin to the belt. The evidence does not disclose any defect in or any negligence of the appellant in reference to the lacing of the belt.

From this it appears that powdered resin could have been safely sprinkled on the belt; that to apply it with the hand by holding a lump of it against the belt was exceedingly dangerous. The danger to one applying resin to the belt, as the appellee here did, resulted, not from the place wherein it was necessary for the appellee to be, but from the manner in which the resin was applied. Powdered resin could have been applied to the belt without danger, and the evidence nowhere discloses that the appellee was directed to apply it by holding a lump thereof against the belt. He selected his own method, but aside from that, and assuming that applying the resin to the belt with the hand was a proper and the safest way so to do, nevertheless the appellant would not here be liable for the appellee's injury, for it was one of the ordinary and obvious risks of his employment, although the application of the resin to the belt exposed the person applying it to an extrahazardous risk; the "dangerous nature of the service (of itself alone) adds

nothing to the liability of the master." 39 C. J. 709; Yazoo & M. V. R. Co. v. Hullum, 119 Miss. 229, 80 So. 645.

The verdict of the jury can be accounted for only on the supposition that it disregarded the instructions of the court which set forth the rule of the common law that an employer is not liable to an employee for an injury received in the course of his employment unless it was caused by the employer's negligence, and acted on the theory of a large and increasing number of the public that certain classes of employers should be held to insure the safety of their employees. This theory has no place in our law now and can be embodied therein only by legislative enactment.

The court below should have granted the appellant's request for a directed verdict.

Reversed, and judgment here for the appellant.