LYONS *v.* WEEMS, et al., d/b/a WEEMS BROTHERS SEAFOOD COMPANY.

No. 39363          December 20, 1954          76 So. 2d 354

*Morse & Morse,* Gulfport, for appellant.

534

*Rushing & Guice,* Biloxi; *Mize, Thompson & Mize,* Gulf-
port, for appellees.

ROBERDS, P. J.

Lyons, the appellant, brought this action against Weems Brothers Seafood Company, appellee, for damages resulting to appellant, as alleged, from the negligence of M. L. Trosclair, a servant of appellee and a fellow servant of appellant. Plaintiff recovered a judgment against defendant for the sum of $3,500. The trial judge, on motion of defendant, set this judgment aside and rendered a judgment in favor of the defendant. From this action Lyons appeals.

Appellee, by its pleas, set up that neither Trosclair nor Lyons was its employe, but, if so, Trosclair was guilty of no negligence causing the injuries. The suit was brought under what is called Jones Act (Title 46 U. S. Code Anno., p. 277, Sec. 688), but both sides proceed upon the theory that Lyons, to recover, had the burden of showing the existence of employer-employee relation between the Seafood Company and Trosclair, and that the injuries resulted from the negligence of Trosclair.

We think that Lyons entirely failed to show any negligence on the part of Trosclair, so we pretermit any

decision as to whether he was the servant of the Seafood Company.

We consider now the evidence on the question of negligence of Trosclair.

Under an arrangement with the Seafood Company, Trosclair and Lyons and three other persons, constituting a crew of five, were dredging for oysters in the Gulf of Mexico off the coast of Mississippi, using the "Thomas D. Kirnan," a boat owned by the Seafood Company. Trosclair was acting as captain by consent of the boat owner and the other members of the crew, and was directing the oyster-gathering operations. Lyons' duties were to cook the meals for the crew and aid in separating the merchantable from the unmerchantable oysters, or, as he said, "pick the oysters out." The process of gathering the oysters, as we understand from the record, was this: There were two dredges, one on either side of the boat. These were let down to the oyster beds, there properly maneuvered so as to bring the oysters into dredges, which were then lifted upon the deck and the oysters emptied from the dredges onto the deck or some proper place thereon. The power for this operation was furnished by the engine motor which propelled the boat. Chains were used to lift the dredges, and these passed over a roller and through what are called blocks or king posts. The dredges were lowered and lifted by use of a lever on deck which applied the power for that operation. At the time of the injury the lever was being applied by crew-member Ledet. Trosclair, from the wheelhouse, indicated to the lever-operator when the dredges should be raised and lowered. One dredge was being raised from the water onto the deck. Lyons had placed his left hand on the iron chain near the point where the chain passed through one of the rollers, when his hand was jerked into the block and badly damaged by the moving chain. As to what happened, Lyons was asked, "And while you were standing there, you had your hand on this iron chain near the point where it went through

one of these rollers? A. Yes, sir. Q. And because of that you were hurt? A. Yes, sir.'' At another place he testified: ''I happened to put my hand on the chain just as the boy throwed the dredging and jerked my hand up into the block.''

It is thus seen that Lyons was not about his duties. No duty required him to place his hand upon the chain. He was not where his duties called. He was following no directive given him by anyone. He was 53 years of age and had spent his entire adult life on, in, and about fishing boats. He had done much work on fishing boats as a carpenter. He was thoroughly familiar with such boats, and with this particular boat. He had helped operate fishing boats gathering shrimp and oysters. Working upon, in and around fishing boats, and assisting in their operation, especially in gathering shrimp and oysters, had been his life's work. He knew all about the danger in placing his hand upon the chain while the dredge lifting and lowering process was being carried on.

He seems to try to base negligence on the failure of Trosclair to call out that the dredge was being lowered, thereby giving him warning not to place his hand upon the moving chain. It is shown that usually the dredge remained overboard some two or three minutes. That process had gone on through the years. Lyons was thoroughly familiar with it. No duty rested upon Trosclair to warn the members of the crew each time the dredges were lowered or raised. No such custom is shown. Lyons knew as much about that as did Trosclair.

Again, Lyons seems to contend that Trosclair should have anticipated that he, Lyons, in moving upon the deck of the ship, might have had need to grasp something and thereby steady himself against unusual winds and waves passing across the deck of the ship, and that in such an emergency he might have caught hold of the moving chain. One could not reasonably be expected to anticipate that another would resort to such an unusual act. Besides, Lyons knew as much as did Trosclair of the

danger of doing that. And, too, the proof discloses this was a clear day. No unusual wind and no waves at all were passing over the deck. No need is shown for a lifetime seaman, familiar with boats of this type and with this particular boat, to resort to any such unusual and dangerous act as the grasping of this moving chain. The learned trial judge correctly rendered judgment for the defendant Seafood Company.

Affirmed.

*Hall, Kyle, Holmes,* and *Gillespie, JJ.,* concur.