LONG, ADMX., ETC. *v.*
WOOLLARD, AND FARMERS ELEVATOR, INC.

No. 43054          May 11, 1964          163 So. 2d 698

724

*Jacobs, Griffith & Hatcher,* Cleveland; *Philip Mansour,* Greenville, for appellants.

*Webb & Webb,* Greenville, for appellee, Guy Woollard.

*Keady, Campbell & DeLong,* Greenville, for appellee, Farmers Elevator, Inc.

Brady, Tom P., J.

This is an appeal from the Circuit Court of Washington County, Mississippi by Lexie McKnight Long, Administratrix of the Estate of James B. Long, Deceased, against Guy Woollard & Farmers Elevator, Inc. There was a jury trial which resulted in a verdict for the defendants, and upon the lower court's overruling of appellant's motion for a new trial, this appeal was perfected.

The material facts disclosed by the record are these. The declaration was filed by the administratrix, and charged that the death of her husband, James B. Long,

was the direct result of the negligence of his employer, Mr. Guy Woollard, together with other negligent acts and omissions on the part of Woollard and the Farmers Elevator, Inc., hereinafter designated as Farmers, Inc. Both defendants denied negligence, and appellant Woollard pled special and affirmative defenses.

In 1961 appellee Woollard was engaged in farming in Washington County, Mississippi, where, on a 1200 acre tract of land, he raised soybeans. In raising and harvesting these beans he used combines, some John Deere tractors, one Caterpillar tractor, a pickup truck and two larger trucks. He had no foreman or overseer, but managed the farm himself. There were five employees working on his farm, all of whom were engaged in the same type of work and none of whom had any supervisory authority over the other. They were all general farming employees and all performed for the most part the same duties. During the harvest season in 1961, the deceased, James B. Long, was employed by Mr. Woollard, and his duties were the same as those of the other employees, driving combines or tractors or trucks, and doing general farm work. Employed at the same time was L. J. Cheatham, who was also a general farm employee.

Mr. Woollard's farm was located several miles from Leland, Mississippi. In Leland, the Farmers, Inc., co-defendant below and co-appellee here, operated grain storage facilities. The two larger trucks which Mr. Woollard owned were used primarily to haul beans and other produce which he harvested on his farm to the elevator in Leland for storage and sale. At one time or another Mr. Woollard and all his employees drove his trucks from the farm to the elevator storage facilities, where they were unloaded. On the afternoon of November 28, 1961, the deceased, James B. Long, was driving one of the bean trucks from the farm to Leland with a load of beans, when the truck broke down in the small village

of Elizabeth. Mr. Woollard's pickup truck was dispatched to Elizabeth to shove the bean truck off. During the course of that operation, bolts connecting the rear axle on the bean truck were sheared off. The truck then could not move on its own power.

Upon determining what was wrong with the bean truck, Mr. Woollard placed a telephone call to Mr. Vince Venuti, who owned and operated a wrecker service and service station in Leland. This call was made on the day prior to Long's injury. Mr. Venuti was advised of the condition of the truck, and that Mr. Woollard would have an employee, namely, James B. Long, available to steer the truck and operate the brakes while the truck was being towed into Leland by the wrecker. Vince Venuti had in his employ two experienced Negro employees, Eddie Griffin and William Fry, who had been operating his wrecker service for about two years. Mr. Venuti testified that he was employed by Mr. Woollard to bring the loaded truck to the Farmers, Inc. the following morning and to get them to unload it, and then to take the truck to the Chevrolet company for necessary repairs. He was told to do it as quickly as possible, because Mr. Woollard was running behind time in moving the beans and was minus a truck since this one was broken.

The record discloses that Venuti agreed to render that service, and on the following morning he sent his wrecker, with these two experienced employees, to Elizabeth to pick up the truck. On that same morning Mr. Woollard took James B. Long with him to the disabled bean truck and left him there. Mr. Woollard testified, and the record reveals, that he instructed Long to stay with the truck and to sit in it and operate the brakes and steering, so that any time the wrecker stopped or turned a corner he would be able to control the truck and prevent its running into the back of the wrecker or swaying or running all over the highway. It appears

that Woollard also instructed Long that Venuti was going to pull the truck to Arnold Chevrolet and they would fix it, and when it was fixed that he (Long) was then to bring the truck back to the farm. These instructions were given to him on the morning of the 29th of November, 1961. Appellee Woollard then left the deceased, Long, in the truck in Elizabeth and returned to his farm, where he issued instructions to another employee, L. J. Cheatham. Long was neither seen again by Mr. Woollard, nor was he given any further instructions by Mr. Woollard. The orders which Mr. Woollard gave Cheatham, who did not see the truck when it was in Elizabeth, were to take Mr. Woollard's pickup truck to Venuti's Service Station and have a flat tire repaired and return to the farm and grease the combines. After Mr. Woodlard gave Cheatham these instructions at the farm, he did not see him again before the accident. These instructions were for Cheatham to take the flat tire in the pickup truck to Venuti's station and have it fixed, and after the flat had been fixed Cheatham was to "get back out to the farm and grease the combines so they could be ready to go to the fields as soon as the trucks got back." It appears that Cheatham did not carry out the orders of his employer, Woollard, but went with Venuti to Elizabeth where the bean truck had stalled. Cheatham had refused to drive the pickup truck of Woollard's to Elizabeth where the bean truck had stopped and tell Venuti's employees not to come over the railroad tracks at Elizabeth where there is a high fill, but when Mr. Venuti told him to come with him, he got into Mr. Venuti's car and went to Elizabeth to instruct Venuti's two employees, Eddie Griffin and William Fry, not to try to cross the tracks over the fill, but to follow the road into Leland, where they could cross more easily the railroad tracks over a slight fill. It appears that when Cheatham and Venuti reached Elizabeth, they found that the truck had already

crossed over the high fill at the railroad crossing and was enroute to Leland. Eddie Griffin was driving the wrecker, and William Fry was riding in the wrecker. It appears that the deceased, Long, was riding in the truck being towed with two chains, and was steering it and operating the brakes when necessary.

The record further discloses that when the bean truck arrived at Farmers, Inc. it became necessary to unhook the chains which had been fastened to the bean truck and the wrecker, so the wrecker could get behind the bean truck and push it onto the loading platform of the grain elevator. It appears further that the boom, or hoist, which is on the rear of the truck, which was not used, but which extends upward behind the wrecker, was too high to allow the wrecker to go onto the loading platform, through and under the elevator. This necessitated disengaging the bean truck from the wrecker, so the wrecker might back up or turn around and get behind the bean truck in order to push it onto the loading platform of the grain elevator. It appears also that Venuti gave instructions to all the people who were there about the wrecker and the bean truck. He left William Fry, a Negro, with Mr. Cheatham and Mr. Long. He instructed all of them when their time came to unload the bean truck to get the truck on the scales and then onto the loading platform. Venuti testified he was directing his speech largely to William Fry, his driver of the wrecker, but he did speak to all of the group together, when he advised them to get the truck on the scales and get it untied from the wrecker. He testified further that what he meant was all should help in any way they could to get the truck emptied, so William Fry could take the truck to the Arnold Chevrolet Company for the necessary repairs. Mr. Venuti testified emphatically that Mr. Cheatham was present, William Fry, Mr. Long, and maybe a "darkey" or two, he was not sure. He testified that he and Long

and Fry and others at the elevator decided that they would have to back the wrecker off and would have to get it behind the truck in order to push the truck through. Cheatham and Long both discussed what should be done. Apparently all agreed that the chains should be unhooked and then the wrecker could be backed up or could turn around so it could get behind the bean truck and then push it onto the loading platform of the elevator. The proof shows that the chains could have been loosened by standing to the side of the wrecker and behind the wrecker, but ahead and to the side of the bean truck, and that it was not necessary to stand between them in order to remove the chains. It appears that William Fry did this but that James B. Long stepped in between the wrecker and bean truck and was engaged in disconnecting or unhooking the chains at the time he was injured. Mr. Cheatham, it appears, who had never driven the wrecker before and who was not employed by Mr. Venuti, had gotten into the wrecker and had backed up a little and then had gone forward. Long was seated in the disabled truck at this time, and he got out of the truck and walked up to the wrecker in which Cheatham was sitting and asked him if he wanted him to untie the chain. Cheatham, who was appellant's witness, testified that when Long got out of the truck and asked him this question that he told Long not to undo the chains yet, to wait, that he had to do some more backing up first; that the motor to the wrecker was running and Cheatham was in the cab of the wrecker. Cheatham testified further that a colored boy at the elevator house had motioned him to back up, that the colored boy was standing right by the elevator door, but he did not know who the Negro boy was, but he heard him say "back up" and saw him motion to back up, and he hollered pretty loud when he said "back up." This was the first time he backed the wrecker up.

Pleas Robinson, a Negro employee, testified he saw Willie Fry bend over at arm's length and untie the chain on his side of the truck without getting between the two vehicles. Willie Fry testified that just as he unhooked the chains on his side, the ones on Long's side could have been unhooked. The chains were hooked onto the bumper of the truck, about two feet from the side of the bumper. It is clear that while Venuti had given Cheatham odd jobs and Cheatham had worked for him at times, Cheatham was Woollard's employee only at this time and that Cheatham was violating the instructions of Mr. Woollard, his employer, in going to the elevator and in not staying at the service station until the flat was fixed and then in not returning to Woollard's farm. It appears that when Cheatham backed the truck up, he pinned and crushed Long between the wrecker and bean truck. Long came from between the two trucks and went to the office, where the scale man or superintendent, Mr. Kimbrell, was. Kimbrell sent for his car and Long was rushed to the hospital, but died shortly after reaching the hospital. Appellant had instituted suit against Cheatham and Venuti. This suit was settled, the appellant receiving $7,500 and agreeing to protect Venuti.

Nine assignments of error are urged by the appellant. The first five errors assigned by appellant are these: (1) That the court erred in overruling appellant's motion for a new trial; (2) the verdict of the jury is contrary to the overwhelming weight of the evidence and not sustained by the evidence; (3) the verdict of the jury and the judgment entered thereon is contrary to law; (4) the court erred in failing to sustain appellant's objection when appellee's attorney stated to the jury in his closing argument that ''Vince Venuti was sent off to supervise a flat tire. That was an expensive bit of supervision and it cost him a fair piece of money'', or words to that effect, all as shown by special bill of

exceptions in this case. (5) The court erred in failing to sustain appellant's objection when appellees' attorney, in his closing arguments to the jury, made certain highly inflammable and prejudicial remarks as follows: "The only reason that Farmers Elevator, Inc. is being sued is because we were in the neighborhood. In this day and time of suit, suit, suit anybody can be nominated", all as shown by special bill of exceptions in this cause. The sixth, seventh, eighth and ninth errors relate to instructions given to appellee Farmers, Inc. and appellee Woollard. Instructions numbers 7 and 9 given to Farmers, Inc., and numbers 1 and 9 granted Woollard, were assigned as errors.

Laborious and earnest briefs are presented by counsel representing the appellant and the appellees. We will consider those parts of the briefs that are pertinent and which relate to the assignment of errors filed in this cause and which merit consideration. The appellant urges that there are seven grounds of negligence of which the appellees are guilty and because of which the appellant should have been granted a new trial and the case now should be reversed and remanded. These grounds are, (a) that Woollard was the employer of and had control over the employee Cheatham; (b) that Woollard furnished the deceased, Long, with an unsafe instrumentality, which he knew was unsafe; (c) that Woollard furnished an unsafe place in which the employee Long had to work; (d) that Woollard failed to furnish any supervision and sufficient labor to accomplish the job assigned to the deceased; (e) the Farmers, Inc. undertook the responsibility of guiding the Woollard bean truck in and out of the loading dock of the Farmers, Inc.; (f) the Farmers, Inc. employees did not guide L. J. Cheatham properly, and negligently directed him to back up, thereby crushing the deceased to death; (g) that Farmers, Inc. employees knew or should have known the danger to the deceased, and failed to warn the deceased of this danger.

Addressing ourselves now to the proposition that appellee Woollard, as employer of the deceased, was negligent in his failure to (a) furnish the deceased with the usual, customary and safe instrumentality for his work, (b) a safe place to work, (c) sufficient supervision and labor, all for the purpose of accomplishing the job assigned to the deceased, and which negligence was a proximate contributing cause of the death of the deceased, and therefore the fellow servant and assumption of risk doctrine does not apply, we will endeavor to consider these contentions as they apply not only to the appellee Woollard, but also to appellee Farmers, Inc., which is also charged with this negligence, wherever this is required and possible. The substance of appellant's charges that appellee Woollard was negligent in failing to exercise reasonable care to furnish a safe place to work and safe instrumentalities and sufficient labor and supervision, relates principally to the truck which the deceased, Long, was required to drive, because of the shorn bolts which made it impossible for the truck to move on its own power. Appellant urges that this disabled truck constituted one of the unsafe instrumentalities. The proof in the record discloses that the truck itself was not a dangerous instrumentality, that it could not move on its own power, and there was nothing about the truck which made it unsafe or dangerous per se, and that the truck, of itself, could not and did not cause any injury. It had to be towed in some manner or means and the use of the wrecker constituted the usual, customary and proper method of moving a disabled truck. The record fails to show that the wrecker which was being used was anything other than the usual and customary type of wrecker that would be used for such a task as this.

The record fails to disclose that the wrecker constituted a dangerous instrumentality or that there was any-thing wrong with the wrecker on the occasion in ques-

tion. The record fails to show that there was anything wrong with the chains which were used to fasten the bean truck to the wrecker so that the latter could be pulled. The record fails to disclose that the chains were applied at an improper or dangerous place, located two feet from the edge of the bumper of the bean truck on each side. The record moreover fails to show that this usual and customary method was not a safe one and was not successfully used in moving the truck a distance of several miles to the Farmers, Inc. place of business. The record fails to show that there was anything unusual, hazardous, unsafe or dangerous about the entire procedure utilized up to the time the bean truck came to the elevator operated by the Farmers, Inc.

It is to be noted that the bean truck was disabled and that the deceased, Long, was assigned to this truck which had been disabled and that his assignment was to drive the truck, guide the truck and apply its brakes, and after they had unloaded the truck, to go on with the truck to Arnold Chevrolet where it would be fixed up and from which place he was then to bring the truck back to the farm. The record discloses that the premises of the Farmers, Inc. were not unsafe or dangerous, that the instrumentalities there were not unsafe; and the proof shows that both Long and Cheatham had delivered beans before, and there was sufficient labor, and there was adequate supervision which had been furnished by Mr. Woollard when he employed Mr. Venuti to assist Long and to supervise the placing of the bean truck at the Farmers, Inc.

██ █ The pictures which were introduced as exhibits corroborate the testimony of appellees' witnesses in this case and show conclusively that there was no unsafe place to work in the usual and customary interpretation of this phrase and as this Court has interpreted and construed the meaning of a safe place in which to work. It should be borne in mind that there is no absolute

duty to furnish an employee or servant by the master of a safe place in which to work. The duty is simply that the master should exercise reasonable care to see that the servant is furnished with a reasonably safe place in which to work. The record discloses that the deceased Long and the appellee Woollard himself had all driven trucks to the elevator carrying beans, and all had had them weighed there and all had delivered the beans to the elevator; that they were all familiar with these comparatively simple operations. The record discloses that all that is needed is for the truck to be driven upon the scales and weighed, a sample of the beans to be taken, the truck then to be driven into the elevator, and then the front of the truck is picked up, the back gate of the truck is released or removed and the beans slide or fall into a bin, where a screw conveyor then moves the beans and deposits them in the silo or elevator where properly they should go. The truck then either proceeds through the elevator or it backs up, as the case may be, is reweighed empty and then leaves the premises and goes out upon the street which is adjacent to the property of the Farmers, Inc., which is clearly reflected in the photographs exhibited.

The task was a simple one and it could have been safely carried out without any danger or any injury to any employee. There was a perfectly safe method of doing the work which had been decided upon. That safe method was for Long, first, to wait and respect the warning which had been given him by Cheatham and not to start untying the chains for the reason that the wrecker was going to have to be backed up a second time in order that the chains might be unhooked, and second, if he had decided not to wait and comply with the instructions of Cheatham, a fellow servant, who had never driven this truck before and who was violating the orders of his employer when he got into the cab of his truck and endeavored to back it, by unhooking

the chains as William Fry had done, by standing out from between the back of the wrecker and the front of the bean truck and by bending over and extending his arm and unloosening the chains just as William Fry had done and as it was testified Long could have done. It was this dangerous and unsafe manner of unhooking the chains in violation of the instructions which had been given him by his fellow servant Cheatham which caused the injuries sustained by Long which resulted in his death.

The record discloses that Venuti instructed Cheatham, Long and the others not to put the truck on the scales until the truck which was then being unloaded had been moved. It appears that Cheatham violated these instructions and that he drove the truck upon the scales. This was after Mr. Venuti had gone. At no time did appellee Woollard ever instruct Cheatham to go to the premises of the Farmers, Inc. The record shows to the contrary that he told Cheatham to go to Venuti's station and after the flat had been fixed to take the tire and return to his farm and to grease the combines so that when the bean trucks were unloaded the combines could be used and the beans could be harvested. � ▪ It should be remembered that liability rests not upon the ground of danger, but upon the ground of negligence ▄ ▪ and it was the act of the deceased Long, who knowingly placed himself in an obvious and manifest place of danger, when he went between the truck and the wrecker after Cheatham had told him not to unhook the chain at that time, that he still had to back up, and it was the negligence of Long which was the sole, proximate cause of his injury. The servant, as yet, has never been excused from the exercise of reasonable normal care for his own protection in the performance of his duties.

From the foregoing, it appears, therefore, that the jury had ample grounds upon which to believe that

the appellees in this case had complied with the requirements of exercising reasonable care in furnishing Long with reasonable safe instrumentalities for the work involved and for a safe place in which to work as well as furnishing sufficient supervision and labor. The disconnecting of a wrecker from a truck is a simple act. It does not require supervision, advice and counsel. Great intellect or understanding is not necessary. There was not a person present who did not appreciate the full import and significance of the act which Long did. The witness Fry testified to this effect. Cheatham himhelf told the deceased Long not to try to unhook the chains. ▉▉ ▉ It is true that the duty to exercise reasonable care to furnish a servant with a reasonably safe place to work is a non-delegable duty, ▉▉ ▉ but breach of this duty cannot be rightfully charged to the appellee Woollard nor can the appellee Farmers, Inc. be charged with a breach of its duty to furnish a safe place to work or to furnish sufficient supervision and labor to accomplish the assignment. ▉▉ ▉ There is an exception to this general rule of non-delegable duty and that exception is that a master is not liable where the place or instrumentality becomes or remains unsafe because of the breach of a duty on the part of the injured servant. The deceased was under no compulsion, direction or order to do what he did at the Farmers, Inc. His instructions were to steer the truck to the elevator, (to use the brakes if necessary,) and, after the truck had been unloaded, to then accompany the truck to the Arnold Chevrolet Company. While Cheatham had no authority over Long and Long has no authority over Cheatham, nevertheless both were acting under the suggestions or instructions of Venuti, who was not their employer, and Cheatham had expressly told Long not to unhook the chain, that he was going to back the truck up. Cheatham had no authority whatsoever, express or implied, from appellees to move this

truck. He had never driven the truck before and Long realizing all this, and in violation of the understanding he had with Cheatham and in spite of the admonition which Cheatham had given him, he deliberately placed himself in a place of danger which was the sole proximate cause of his injury. City of Long Beach, Mississippi v. Spooner, 224 Miss. 246, 79 So. 2d 833; Wilkie v. West Const. Co. of Tenn., 196 Miss. 234, 16 So. 2d 617; Stewart v. Kroger Groc., 198 Miss. 371, 21 So. 2d 912; Aponaug Mfg. Co. v. Hammond, 185 Miss. 198, 187 So. 227. The deceased was a mature and sensible man of some experience in the character of work which was being performed, and he had the responsibility to take care of himself and to look out for obvious or manifest dangers in the details of his work. The danger here was obvious, open and not hidden. See Brown v. Coley, 168 Miss. 778, 152 So. 61.

■■ Appellant urges that the truck was overloaded and that this overloading the truck caused the defect. The record fails to disclose that the truck was overloaded, but to the contrary shows that the truck could have legally carried a quarter more of its actual load than it had at the time that it was disabled. The maximum useable weight on this particular truck was 26,300 pounds and the load of beans on this truck at the time actually weighed only 20,620 pounds, so that the truck could not have been classed as an unsafe instrumentality on account of the weight of the beans.

■■ Because there was a place of danger between the wrecker and the stationary disabled bean truck of the appellant Woollard, and because the deceased Long elected to place himself in a position of exposure to that danger, in spite of the stern fact that he had been warned not to do so at that time because the truck was going to have to be moved, and in spite of the further fact that his employer, Mr. Woollard, had not instructed him to take any part in the unloading

of this truck, we can not say that because of these facts the appellee Woollard or the co-appellee Farmers, Inc. had failed to exercise reasonable care (1) to see that the deceased had a safe place in which to work, or (2) to provide sufficient supervision and labor, or (3) to see that he had safe instrumentalities with which to do the work.

■■ The jury was carefully and well instructed with reference to the duty and care which Wollard and the appellee, Farmers, Inc., were required to exercise in furnishing a reasonably safe place in which to work, safe instruments, and sufficient labor and adequate supervision. Appellant's instructions 1 and 2, as reflected by the record, embodied each of these theories of liability and the jury was properly instructed. Therefore, the verdict of the jury should not be disturbed since it is supported by sufficient, if not overwhelming, evidence.

We have repeatedly held, that unless it is apparent that the verdict is manifestly wrong or that it is against all reasonable probability, or against the overwhelming weight of the evidence, it should stand. See Lynch v. A. S. Mach. Co., 202 Miss. 515, 32 So. 2d 546; Buford v. O'Neal, 240 Miss. 883, 128 So. 2d 553.

■■ While appellant urges that the deceased Long was an unskilled, ignorant and uninformed man, the fact nevertheless remains that he was mature and sensible and that he was a man of experience in the character and type of work which he was engaged in doing and that he had sufficient intelligence and experience to be able to look out and to take care of himself and appreciate the obvious and natural manifest dangers in the details of the work such as he and Cheatham were engaged in daily when employed by Mr. Woollard, and at the time of his injuries. See Harris v. Gulf Oil Corp., 147 Miss. 623, 157 So. 2d 55. The danger in which Long placed himself was an obvious danger, obvious to him

and obvious to all concerned, and the duty of the master does not relate to obvious dangers which are apparent and customary in the performance of work of this nature. City of Long Beach v. Spooner, supra; Stewart v. Kroger Groc. Co., supra; Wilkie v. West Construction Co. of Tenn., supra; Aponaug Mfg. Co. v. Hammond, supra; Brown v. Coley, supra; Lyons v. Weems, 222 Miss. 532, 76 So. 2d 354; Anderson-Tully Co. v. Goodin, 174 Miss. 162, 163 So. 536. The record fails to disclose that additional workers would have made the work safer for Long but indicates that they could have caused confusion and would not have added any precautionary measures òr made it safer to accomplish the task at hand. ██ ██ There was no necessity to make rules or give specific instructions with reference to the method of carrying out the task which Mr. Venuti had assigned them, for the reason that it is only where the work, in addition to being dangerous, is complex, and the conditions which may arise are uncertain or obscure, which certainly cannot be held to be present in the case at bar. Brown v. Coley, supra, and other cases cited supra. Appellant urges that the case of Buford v. O'Neal, 240 Miss. 883, 128 So. 2d 553, states the rule of law which is applicable here. The rule of law in that case does not have application here because of the great factual differences. In the Buford v. O'Neal case, it is obvious that the master had failed to exercise reasonable care to provide a sufficient number of employees or laborers to act in concert, in order to lift a very heavy flywheel and, in that case, because of the insufficient number of laborers furnished by the employer, those attempting to lift the flywheel lost control of it and it fell, causing the injuries complained of. Insufficient laborers to lift the wheel was the sole proximate cause of the injuries. The cases of Thompson v. Thomas, 219 Miss. 552, 69 So. 2d 238, and Edmon v. Kochtitzky, 211 Miss. 301, 51 So. 2d 482, are

also cited by the appellant in support of his contention that there was a defective truck involved and the employer was negligent in failing to furnish the deceased Long with a safe truck in which to operate. In the Thomas case and in the Edmon case the employees were riding in defective motor vehicles, the first one having defective brakes, and the second one having defective steering mechanism. It was expressly because of the defective brakes and because of the defective steering mechanism that the accidents complained of were sustained. In the case at bar, however, the defective axle or the shearing which occurred around the axle on the bean truck did not play any part whatsoever in Long's injury. In G. M. & N. R. Co. v. Brown, 143 Miss. 890, 108 So. 503, which appellant cites, in which case the servant was injured while working on the top of some decking, which it was his duty to prepare, the court held in that case that requiring the master to use ordinary care to provide a reasonably safe place for a servant to work is not applicable to a case in which the very work which the servant is employed to do is of such a nature that his progress is constantly changing the conditions as regards an increase or diminution of safety; that such hazards were considered ordinary dangers or hazards in the risks of employment which were assumed by the servant when he accepted the employment. In Oakes v. Mohon, 208 Miss. 478, 44 So. 2d 551, which is also cited by appellant, the servant did what the foreman told him to do and the master was then acting through his supervisor and had provided an improper instrument and had specifically instructed the servant to use it in an unsafe manner, which resulted in the injury, the instrument in that case being a twenty-four inch Stillson wrench. These cases do not have any application to the case at bar because of the wide divergence in facts and circumstances. Waterman-Fouke Lbr. Co. v. Miles, 135 Miss. 146, 99 So. 759,

is more in point since there was a defect which was to be repaired in each instance and for which the master could not be held liable. Though Long was not hired to make the repairs to the truck, he was directed to steer the truck to the place where it was to. be repaired. He was to this extent working to bring about the repairs to the defective appliance about which appellant now complains.

The testimony in the record, and the photographs, completely fail to establish any negligence on the part of Farmers, Inc. This appellee had instructed its employees not to undertake to drive the customer's vehicle onto the scales and into the elevator unless such had been left on the premises overnight and special arrangements had been made for that purpose. There was nothing unsafe about the premises, the scales, or the elevator platform. It was not the responsibility of Farmers, Inc. to drive the bean trucks of customers onto the scales, or elevator platform. The record does not disclose that anyone was needed to flag or direct the locating of the trucks. The record fails to show clearly that any employee of Farmers, Inc. flagged, motioned or directed the movement of the truck. Cheatham said someone flagged him, but he did not know his name, or for whom he worked. These are all, moreover, questions of fact, and the jury resolved them in favor of the appellee, Farmers, Inc. We are forced to conclude that the jury had ample and sufficient evidence to find that the appellees were not negligent in the exercise of reasonable care insofar as safe instrumentalities, safe place to work, sufficiency of labor to accomplish the task, adequacy of instruction, and warning of obvious risks and dangers are concerned. Walley v. Williams, 201 Miss. 84, (91, 92), 28 So. 2d 579; Stewart v. Kroger Groc. Co., supra; Favre v. Louisville and N. R. Co., 180 Miss. 843, 857, 863, 178 So. 327; Martin v. Beck, 177 Miss. 303, 171 So. 14;

Goodyear Yellow Pine Co. v. Clark, 163 Miss. 661, 668, 142 So. 443.

A careful consideration of appellees instructions, including the four instructions granted to the appellees and complained of by the appellant which were based upon evidence, and when construed together with appellant's instructions, convinces us that the jury was correctly instructed as to the rules of law applicable under the facts determinable by the jury. Assumption of risk instructions are risky themselves and while the instruction granted to appellee Woollard (located on page 34 of the record), dealing with whether the appellant knowingly assumed the risk of his act, does not include the additional requirement that the act must be the sole proximate cause of the accident, it does not thereby constitute reversible error for the reason that the instructions of the appellant and the appellees when read together clearly present to the jury the legal necessity that the act must be the sole proximate cause of the accident. Ovett Land & Lbr. Co. v. Adams, 109 Miss. 740, 69 So. 499; Buckeye Cotton Oil Co. v. Saffold, 125 Miss. 407, 87 So. 893; Charles Weaver & Co. v. Harding, 182 Miss. 345 et seq., 180 So. 825; Buckley v. United Gas Public Service Co., 176 Miss. 282, 168 So. 462; Tarver v. J. W. Sanders Cotton Mill, 187 Miss. 111, 192 So. 17.

The record clearly establishes the fact that Cheatham was not acting in furtherance of his master's (Woollard's) business, that he was in fact the servant of Venuti, acting under Venuti's orders, and in violation of Woollard's orders, and not under Woollard's control. We have often held that though a servant may be the servant of two employers, still when he steps out of the scope of his employment by one of the employers and is acting solely under the direction and control and in the course of his employment by the other, he is no longer the servant of the first

employer. ■ ■ A master is liable only for the torts committed by his servant when done within the scope of his authority. ■ ■ Cheatham had violated Woollard's orders and had left Woollard's employment, though temporarily, and Venuti became responsible for Cheatham's actions under the doctrine respondeat superior, and Woollard was no longer, under said doctrine, responsible for Cheatham's actions. Yazoo & M. V. R. Co. v. Denton, 160 Miss. 850, 133 So. 656; Denton v. Yazoo & M. V. R. Co., 52 S. Ct. 141, 284 U. S. 305, 76 L. Ed. 310; McDonald v. Hall-Neely Lbr. Co., 165 Miss. 143, 147 So. 315; Kisner v. Jackson, 159 Miss. 424, 132 So. 90; Gabbert v. Treadaway, 194 Miss. 435, 13 So. 2d 157; Miller v. Teche Lines, Inc., 175 Miss. 351, 167 So. 52; Loper v. Yazoo & M. V. R. Co., 166 Miss. 79, 145 So. 743; Natchez, C. & M. R. Co. v. Boyd, 141 Miss. 593, 107 So. 1; Hand v. Industrial Life & Health Ins. Co., 174 Miss. 822, 165 So. 616; Davis v. Price, 133 Miss. 236, 97 So. 557; 6 Labatt's Master and Servant (2d Ed.) p. 6704; Crosby Lbr. & Mfg. Co. v. Durham, 181 Miss. 559, 179 So. 285. It follows therefore that Wolliard cannot be held responsible for Cheatham's act in backing the G. M. C. wrecker into the deceased.

■ ■ In conclusion we do not agree that the statements made by counsel for appellee Farmers, Inc. constitute reversible error because they are inflammatory and prejudicial, and were made solely to appeal to the passions of the jurors. The first statement complained of is as follows: "Vince Venuti was sent over to supervise a flat tire. That was an expensive bit of supervision and it cost him a fair piece of money." The second statement is: "The only reason that Farmers Elevator, Inc. is being sued is because we were in the neighborhood. In this day and time of suit, suit, suit, anybody can be nominated." While these statements scarcely embellish the summation to the jury, they can-

not be held to lie outside the boundaries of propriety so far as to constitute reversible error. The first statement was not an innovation in the record since appellant disclosed that she had already collected $7,500 from other parties and the record shows that she had previously sued both Cheatham and Venuti for her husband's death. ██ ██ The second statement is not as closely connected to the record though the elevator is less than a block from Venuti's station, but it is still within the classical confines, though awkward, set by a former Chief Justice in Gray v. State, found in 90 Miss. 235, 43 So. 289.

The accident and resultant death of Long and the effect thereof on his little wife and children is indeed lamentable, but sympathy cannot constitute just grounds for a verdict against these appellees.

The verdict of the jury and the judgment of the trial court for the above stated reasons is affirmed.

Affirmed.

*Kyle, P. J., and Ethridge, Rodgers and Patterson, JJ.,* concur.